# Central Pennsylvania Lumber Company's Appeal.

*Taxation—Unseated lands—Appeals—Revision of valuation—Intermediate years—County commissioners—Courts—Statutes—Construction —Constitutional law—Due process of law—Acts of April 3, 1804, P. L. 517, April 15, 1834, P. L. 509, May 15, 1841, P. L. 393, July 27, 1842, P. L. 441, April 19, 1889, P. L. 37, and May 8, 1909, P. L. 491.*

1. Our whole system of taxation is purely statutory and neither the county commissioners nor the courts have any power in the revision of valuation, or in the levy and assessment of taxes, except such as has been conferred by statute.

2. Where appeals are taken under the acts of 1889 and June 26, 1901, P. L. 601, the courts sit in review for the purpose of making such order or decree as may seem equitable under the facts, but these acts do not confer upon the courts the power to treat the controversy on the broad principles of equity without reference to the requirements of the tax laws.

3. By the provisions of the acts of 1804 and 1834, the legislature intended that the valuation of the triennial year should remain undisturbed for a period of three years except where buildings or other improvements had been destroyed after the valuation was adjusted; or "where coal, ore or other minerals . . . . have been mined out subsequently to such triennial assessment," as provided by the Act of May 8, 1909, P. L. 491. It follows from the fact that the legislature has expressly provided what abatements can be made in the valuation of real estate that no other allowances can be legally made.

4. Neither the county commissioners in the first instance, nor the court on appeal, have the power to reduce the assessed valuation of unseated lands in the intermediate years between triennial assessments by allowance for timber removed.

5. The Pennsylvania system of taxation is consistent with natural justice, and the enforcement of the tax laws of this state does not deprive a taxpayer of his property without due process of law.

Argued May 2, 1911. Appeal, No. 273, Jan. T., 1910, by the Central Pennyslvania Lumber Company, from the decree of C. P. Potter Co., June T., 1908, No. 179, in the matter of the appeal of the Central Pennyslvania Lumber Company, from the decision of the Commissioners of Potter County for the year 1908. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from the county commissioners.  Before WILSON, P. J., specially presiding.

The facts appear by the opinion of the Supreme Court.

The court below reached the following conclusions of law:

1. The county commissioners, sitting as a board of revision and appeal, have no right to reduce or change the valuation of timber lands as fixed by the triennial assessment in the intermediate years, when the timber has been removed therefrom.

2. This court has no power to make a reduction in the assessed valuation of unseated land by reason of the voluntary cutting and removing of the timber and bark therefrom by the appellant, subsequent to the triennial assessment.

*Errors assigned* among others were (1, 2) findings of law as above.

*W. I. Lewis* and *Archibald F. Jones*, with them *Calvin H. McCauley, Jr.*, and *R. R. Lewis*, for appellant.—The assessment and valuation of land or property is an annual process: Greenough v. Fulton Coal Co., 74 Pa. 486; McReynolds v. Longenberger, 75 Pa. 13; Chestnut Hill Iron Ore Co.'s App., 6 Lanc. Law Rev. 137; Ferguson v. Lycoming County, 8 Pa. C. C. R. 667.

The Act of July 27, 1842, P. L. 441, gave the commissioners power to equalize assessments and to hear appeals in intermediate years.

*W. K. Swetland*, with him *W. F. Dubois*, for appellee, cited: Phila. & Reading Coal & Iron Co. v. County Commissioners, 229 Pa. 460; Manor Real Est. & Trust Co. v. Cooner, 209 Pa. 531; D. & H. Canal Co. v. Walsh, 11 Phila. 587; Beechwood Imp. Co.'s App., 12 Pa. Dist. Rep. 430; Schmuck v. Hartman, 222 Pa. 190.

OPINION BY MR. JUSTICE ELKIN, May 23, 1911:

The question for decision in this case is whether the

county commissioners in the first instance, or the courts upon appeal, have the power to reduce the assessed valuation of unseated lands in the intermediate years between triennial assessments for causes not expressly authorized by statute. The valuation of the lands in question for taxation purposes was fixed at the triennial assessment of 1907 for a period of three years. No question as to the regularity or validity of that assessment is involved in the case here presented. After the valuation of these several tracts of land had been fixed for the three-year period, appellant company cut and removed the hemlock timber and bark from a large number of acres and thus depreciated the market value of the lands. All this was done after the valuations had been returned by the local assessors and the county commissioners, sitting as a board of revision, had passed upon and equalized the assessment. In other words, there had been a completed assessment before the timber was removed. No question is raised as to the validity of that assessment for the year 1907. In 1908 representatives of appellant company appeared before the county commissioners and asked a reduction in the assessed valuation of the tracts of land from which timber had been cut and removed. The county commissioners refused to allow any reduction and an appeal was taken to the court of common pleas, which after a careful review of the facts and the law sustained the action of the county commissioners. The learned court below based its decision upon the ground that our whole system of taxation is purely statutory and neither the county commissioners nor the courts have any power in the revision of valuations, or in the levy and assessment of taxes, except such as has been conferred by statute. That such is the law has been said over and over again. No authorities need be cited to sustain this fundamental principle in the administration of tax laws. It is recognized in every jurisdiction and by all text writers. In several recent cases this court has directed the attention of all taxing authorities to the statutory requirements as

the basis of our system of taxation. We have said that there is no such thing as taxation by implication and that all authorities having to do with the valuation and assessment of land and the levy and collection of taxes must look to the statutes for their authority to act: Phila. & Reading Coal and Iron Co. v. County Commissioners, 229 Pa. 460. This is settled law and needs no further discussion. A brief reference to our acts of assembly will be helpful to a proper understanding of the question raised by this appeal. The Act of April 3, 1804, P. L. 517, provided that all lands held by individuals, companies or bodies corporate shall, for the purpose of raising county rates and levies, be assessed in the same manner as other properties. The Act of April 15, 1834, P. L. 509, required the county commissioners to issue their precepts to local assessors in every third year for the purpose of having a return made of all taxable persons residing in their respective districts, "and of all property taxable by law, together with a just valuation of the same to be made in the manner hereinafter directed." Several sections of the act of 1834 were amended by the act of May 15, 1841, P. L. 393, in which it is provided that, "said valuation to continue until the next triennial assessment; at which time the assessment shall be made by the assessors as prescribed by the provisions of this act." It will thus be seen that triennial assessments have been the fixed policy of our system of taxation for three-quarters of a century. This assessment was intended to and does fix the valuation of lands as the basis of the tax levy for a period of three years. While the valuation of lands is thus fixed in the triennial year, a mode of assessment for each of the two succeeding years is also provided. In the two succeeding years it is made the duty of the county commissioners to send transcripts of such triennial assessments to the local assessors who are required to note and return such alterations as may have been occasioned "by the transfer or division of real estate, or by the destruction of buildings." By the twelfth section of the act of 1834 it is

made the duty of the local assessors in the two succeeding years to give notice to the taxable inhabitants in like manner as after the triennial assessment, but in certain cases only, and these cases are enumerated in the act. As to land valuations, the notice is only required to be given, "in the case of real property, where buildings or other improvements have been destroyed since such triennial assessment." When the assesssors have made their return, the county commissioners are required to fix a time and place to hear all persons who may apply for redress, and they are authorized to grant such relief as shall appear just and reasonable, but, with the express limitation in granting relief that there shall be no allow-ance, "or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, excepting where buildings or other improvements have been destroyed subsequent to such triennial assessment." In other words, the legislature intended that the valuation in the triennial year should remain undisturbed for a period of three years except where buildings or other improvements had been destroyed after the valuation had been adjusted. This remained the law from 1834 to 1909 when the legislature added another cause for which deductions may be made in the two succeeding years. This cause is, "where coal, ore or other minerals assessed under the triennial assessment, have been mined out subsequently to such triennial assessment." It will thus be seen that the legislature in dealing with this subject has expressly provided what abatements can be made in the valuation of real estate in the two years succeeding the triennial assessment, and it necessarily follows that no other allowances or abatements can be lawfully made. It is expressly provided in the act of 1834 that the valuation fixed in the year of any triennial assessment shall continue until the next triennial assessment. Of course this provision of the act must be read in connection with those provisions which allow abatements for specified causes, but except as reductions

may be made for the causes specified, the triennial assessment remains undisturbed for the three-year period. This is the law and so far as we are advised it has always been so understood. What, then, is the situation of the appellant company. The valuation of its lands was fixed at the triennial assessment of 1907. It does not claim an abatement by reason of the destruction of buildings or other improvements. It makes no demand for an abatement on the ground that coal, ore or other minerals have been mined out since the last triennial assessment. It specifies no cause for abatement authorized by statute. All of these matters being the subject of statutory regulation we must look to the statutes for our authority to make inquiry, or to review what taxing authorities have done, or to grant relief when demanded. The statutes are as binding upon the courts as upon the direct taxing authorities. The courts have no greater power to grant relief than the county commissioners, or the board of revision. When appeals are taken under the Acts of April 19, 1889, P. L. 37, and June 26, 1901, P. L. 601, the courts sit in review for the purpose of making such order or decree as may seem just and equitable under the facts presented, but what is just and equitable in tax cases must be determined with reference to the requirements of the law. The acts authorizing appeals from the valuations fixed by the county commissioners or the board of revision do not confer upon the courts the power to treat the controversy upon the broad principles of equity without reference to the requirements of the tax laws, but their decrees must be equitable and just in the sense of uniformly and fairly enforcing the law as it is written against all persons. In the present case, if the courts could treat the question involved upon the broad general principles of equity, they would be compelled to say that the valuation fixed at the triennial assessment in 1907 was not a fair value of the lands after the timber was removed in 1908, but there was no new valuation of these lands in 1908, and hence no valuation in that year from

which an appeal would lie. The time in which an appeal might be taken from the triennial assessment in 1907 had passed so that the validity of that valuation could not be inquired into when the present appeal was taken. The only question that could arise in 1908 was whether an allowance or abatement should be made on account of the timber which had been removed since the last triennial assessment. This is purely a question of allowance or abatement and has nothing to do with the validity of the valuation itself. There is no authority in the law for treating allowances or abatements upon the basis of the equities that may exist in a particular case, but such abatements can only be made as the statutes prescribe. The statutes do not authorize abatements to be made for timber removed in the two years succeeding the triennial assessment, and therefore there is no authority to grant relief on this ground. Hardships may sometimes result from the enforcement of this statutory rule, but substantial benefits are frequently derived. Lands as frequently appreciate as depreciate in value during the three-year period. When they appreciate in value the taxpayer has the benefit on his side; when they depreciate the advantage is with the county, but in a series of years the advantages and disadvantages will be substantially equalized. As an illustration, after the timber had been removed in 1908, suppose oil in large quantities had been discovered on these lands, their value would have been increased three, four, five or may be ten fold, but the valuation would have remained the same until the next triennial assessment. In such a case the advantage would be on the side of the taxpayer. Under such circumstances the county would be as powerless to increase the valuation during the two succeeding years as is the taxpayer to have it reduced except for statutory causes.

In the discussion of this question, Judge COOLEY in his work on Constitutional Limitations (6th ed.), p. 631, makes use of the following language: "So the man who owns property when the assessment is taken may have

been deprived of it by accident or other misfortune, before the taxes become payable, but the tax is, nevertheless, a charge against him. And when the valuation is made but once in a series of years the occasional hardships and inequalities in consequence of relative changes in the valuation of property from various causes, become sometimes very glaring. Nevertheless, no question of constitutional law is raised by these inequalities and hardships, and the legislative control is complete." These observations of the learned jurist are a complete answer to the contentions of appellant in the present case. The hardships complained of and the equities insisted upon grow out of conditions over which the taxing authorities have no control. The legislature, and not the courts, must authorize the relief to be granted if it be deemed expedient to do so.

We do not see that the bill of rights of our own constitution, or the fourteenth amendment to the constitution of the United States has any application to the facts of the case at bar. Our system of taxation is consistent with natural justice, and the enforcement of our tax laws does not deprive a taxpayer of his property without due process of law.

Decree affirmed at cost of appellant.