## Pusey's Estate.

Argued January 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Frank M. Hunter,* of *Hannum, Hunter, Hannum & Hodge,* for appellant.—The term "encumbrances" as employed in the restrictive provision of appellant's bond comprehended encumbrances created by obligor prior to the execution of appellant's bond and mortgage: Singer v. Brennan, 19 Pa. Dist. R. 376; Stover v. Metzgar, 1 W. & S. 269; Schermer v. Wilmart, 282 Pa. 55.

The claimant is entitled to be paid along with the rest of the general creditors and is not compelled to wait until the maturity of the bond and mortgage.

*M. B. Elwert,* for appellee.—Every contract shall be construed so as to give effect to the intention of the parties; in ascertaining that intention it is proper to consider all negotiations leading to the formation of the contract, its subject-matter and the end to be accomplished: Myers's Est., 238 Pa. 195; McMillin v. Titus, 222 Pa. 500.

In construing the meaning of an ambiguous contract, the courts consider the attending circumstances at the

time the contract was made and also the interpretation put on it by the parties themselves as evidenced by their course of dealing under it: Thatcher v. Ry., 35 Pa. Superior Ct. 615; McKeever v. Coal Co., 219 Pa. 234; Sternbergh v. Broch, 225 Pa. 279; Keiser v. Real Est. Co., 43 Pa. Superior Ct. 130; Fee v. Lumber Co., 50 Pa. Superior Ct. 557; Callen v. Hilty, 14 Pa. 286; Connery v. Brooke, 73 Pa. 80; Richardson v. Clement, 89 Pa. 503; McKeesport Machine Co. v. Ins. Co., 173 Pa. 53; Wilson v. Wernwag, 217 Pa. 82; Lacy v. Green, 84 Pa. 514.

OPINION BY MR. JUSTICE SADLER, February 5, 1930:

Arthur W. Pusey and his brother Fred Taylor Pusey had joint interests and mutual accounts arising from the ownership of the Majestic Hotel property in the City of Philadelphia, and property subsequently acquired from one Earle, used in connection therewith. Disputes between the brothers arose, which terminated in a written compromise and adjustment on July 28, 1925. By its terms, Fred agreed to surrender all claims to the property, which was in the name of Arthur, who continued in the control and management, together with personal demands against him. The consideration fixed in settlement was $60,000, to be secured by bond and mortgage delivered to a trust company, and held by it until the due date, designated as January 1, 1927. The right to liquidate all liability by the payment of $50,000 was given, but this alternative provision was not carried out. It was provided that the obligation should, be subject to existing mortgages, or those thereafter created, to the amount of $1,600,000, with the stipulation that if Arthur "shall, by his voluntary act, create encumbrances affecting the premises, not including judgments obtained adversely," to a greater amount, then the bond accompanying the mortgage should be unrestricted, in so far as the right to collect the sum due was concerned, otherwise to be limited to the hotel

property and that adjoining. The fair construction of these papers is that if this total should be reached by adding together all of the claims enforceable at any period, though contracted on different dates, the claim should then become general as to any property of the obligor. The mortgage agreed on was executed on September 9th of the same year, and, by its terms, bound the premises already referred to "under and subject nevertheless to mortgages and encumbrances now existing upon said premises." These included the Stern lease, executed in 1921, and two liens, one for $90,000, and the other for $550,000, then of record.

Arthur died on May 14, 1926, and the hotel was subsequently sold on foreclosure proceedings for an amount insufficient to pay the legal claims entered of record against it. At the adjudication of his estate, a demand was made for an allowance from the balance of the general assets for distribution by the obligee, who claimed that the bond for $60,000, given him in settlement, had become an indebtedness unlimited in extent, since the mortgagor had permitted claims to attach to the realty in excess of the maximum designated, and his obligation had therefore become an unrestricted demand against any remaining assets of the estate. A proper solution of the question involved makes necessary a determination of the total voluntary indebtedness contracted by Arthur and encumbering the Majestic Hotel and adjacent property.

It is clear that the two mortgages existing at the time of settlement must be considered as making up a part of the whole amount contemplated by the parties, and these reached the sum of $1,450,000. After the adjustment, a third, for $130,000, reduced by $5,000 at the time of Arthur's death, was executed and delivered, and, to the extent of the principal remaining due, this is also to be included, raising the record indebtedness to $1,-575,000. None of these obligations were in default when Arthur died, and the semiannual interest had been paid

on each to the last date due, respectively, March 5th, April 6th and March 11th. The claimant contended that the amount accruing from the times mentioned to that of death, which occurred on May 14th of the same year, should be added. These sums, though payable, if foreclosures had taken place, were not collectible adversely against the mortgagor at the time of his decease, and cannot therefore be considered in fixing the amount of the outstanding encumbrances. It will be noticed that the mortgage given claimant provided that receipts for accrued interest need not be furnished until November 1st of each year, and the payment at any time prior thereto satisfied the duty imposed. These additional sums, not due, and unenforceable by judicial proceeding when Arthur died, cannot be considered in determining whether the maximum amount of encumbrances were in force, so as to make the bond given claimant an unrestricted obligation.

It is further contended that there were unpaid taxes which might, in the future, be converted into collectible liens. Apportioned to the time of death, these would total $7,766, though, if considered as payable for the whole year 1926, the sum would be considerably increased. The mortgage provided for the payment of such charges annually by November 1st, and those assessed for 1925 had been fully satisfied. The amounts due for 1926 could be paid after January 25th (Act of July 21, 1913, P. L. 863), yet neither the city nor school district could force the collection until the year had gone by, though certain penalties for delay might have attached after August 31st of the year in which they were payable. It is true that, if not satisfied, the same become a first lien as of the date of assessment, if a judicial sale occurs, and are entitled to a preference in such case on distribution of the proceeds (Act of May 16, 1923, P. L. 207, section 2), yet this statute did not give any right to enforce payment within the year, except in the instance mentioned. It is also the law that,

if conveyance of the land had been attempted, the amount of taxes assessed could, by reason of custom, have been apportioned in the absence of a stipulation to the contrary (Schermer v. Wilmart, 282 Pa. 55), but there was no right on the part of the municipal authorities to enforce collection within the current year, except as noted. If the claim had been one fixed by a proper judicial proceeding, the contrary would be held, as in Lafferty v. Milligan, 165 Pa. 534. No such situation is found here, and the ultimate statutory liability cannot be treated as a voluntary encumbrance existing at the time of Arthur's death. Even if the taxes were delinquent, and for that reason a lien, such has been held not to constitute technically a voluntary charge, since made so only by virtue of legal enactment: Hosford v. Hartford Fire Ins. Co., 127 U. S. 404. The 1926 taxes cannot be included in determining whether the maximum limit of liability, provided for in the agreement, bond and mortgage, had been exceeded, so as to remove the restriction in the collection of the bond.

Again, it is urged that the values of two leases on the property, still in force when Arthur died, are to be treated as encumbrances. It will be remembered that he was the manager of a hotel property, and, as such, contracted for the occupancy of the many apartments located therein at fixed rentals for various periods of time. To conduct a going-business of this character, it was necessary that such arrangements be made. It is not claimed that an ordinary renting of rooms for a definite term constituted, under the circumstances, in each instance, an additional encumbrance. Where sale of land, and the passing of title is involved, an outstanding leasehold has been held to be such, for a charge of the kind mentioned means some burden which affects the value of the property, as a lien, easement or servitude, and includes any right or interest in the land which may subsist in third persons to the diminution of the value of the land, but consistent with the convey-

ance of the title: Howell v. Northampton R. R. Co., 211 Pa. 284; Batley v. Foerderer, 162 Pa. 460. In the present case, the obligor was conducting an apartment hotel, and as a necessary part of the management of its affairs, leased rooms at determined prices. In the absence of special circumstances, such agreements could not be said to constitute encumbrances of the character evidently contemplated by the parties to the contract in dispute.

It is urged that, in two instances, the contrary should be held. The first concerns the Stern lease of 1921, in force when the Earle property was acquired, and as to which an unsuccessful attempt to discharge it had been made: Camden S. D. & T. Co. v. Eavenson, 295 Pa. 357. Its term extended for a number of years, and had been assumed as part of the consideration of the land purchased as an annex to the hotel. Even if treated as an encumbrance, it can have no consideration here, since the mortgage to claimant excepted such as existed when the agreement of 1925 was entered into. A different situation arises as to the contract with the Broad Street Trust Company, made later in 1926, running for one year, with the privilege of renewal for two additional years. If this was a mere renting of space in the hotel, it could be no more considered than the permissive use for hire of a room or apartment, but there is this distinction: At the time it was executed, a loan for $15,000 was secured by Arthur, and the lease assigned as collateral to secure its repayment, the rents accruing to be applied to the extinction of the amount borrowed and thereafter to be paid to the hotel management, as were the sums due by any others residing in the hotel. Where a contract to rent is equivalent, as it was here, to putting the property in pledge for money, an encumbrance to the amount of the debt is created. The voluntary obligation imposed thereby on the building is, therefore, to be added to the other sums in determining whether the maximum referred to in the contract was exceeded.

This increases the voluntary charges to $1,590,000. The bond was restricted in the source of payment unless the mortgages and encumbrances, properly considered, reached $10,000 more than the total mentioned. As the amount permitted was not exceeded, the provision, that the obligation should in such case become unrestricted as to decedent's other property, was inoperative, and the learned court below properly refused to allow the claimant thereunder to share in the distribution of the general assets of the estate.

The agreement became binding on the parties, and was to "extend to and enure to the benefit of their heirs, executors, administrators and assigns." It is suggested, therefore, that moneys paid for interest and taxes by the executors after the decedent's death can be taken into account in determining whether encumbrances to the amount named had been reached, thus avoiding the provision that the collection of the debt should be limited to the property mentioned in the agreement, bond and mortgage. Evidently the parties contemplated voluntary charges contracted by Arthur during his lifetime. Though the personal representatives may have paid some sums, not collectible when he died, but becoming due thereafter, such amounts cannot be included in fixing the total. The purpose of the clause referred to was evidently to bind the estate, and permit the unrestricted use of the bond after the obligor's death in case he violated, while living, the condition imposed, and, by his own voluntary act, increased the encumbrances beyond $1,600,000, which event did not occur, as appears by the record.

The decree of the court below is affirmed at the cost of appellant.