School District of the City of Sharon *v.* John Boyle Estate, Appellant.

Argued April 20, 1934.

418

Before Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker and James, JJ.

*Emrys G. Francis,* for appellant.

*C. E. Brockway* of *Brockway, Whitla & McKay,* for appellee.

Opinion by Keller, J., October 3, 1934:

This is an appeal by Thomas M. Boyle, Executor of the will of John Boyle, deceased, from a judgment entered in favor of the plaintiff, the School District of the City of Sharon, on a case stated, in a scire facias sur municipal lien for taxes. The case stated appears in the reporter's statement.

The rule is well settled that in deciding the question or questions thus submitted the court is limited to the facts presented in the case stated and may not go beyond those thus brought upon the record nor assume them by way of inference: Com. v. Howard, 149 Pa. 302, 24 A. 308; Lawhead v. Craig, 315 Pa. 49, 172 A. 104. Whatever is not included in the statement of facts as presented is presumed to have been kept out for sufficient reasons: Mutchler v. City of Easton, 148 Pa. 441, 23 A. 1109; and not to exist: Richardson v. First Brethren Church, 314 Pa. 423, 171 A. 897.

From the case stated it appears that the Shenango Hotel, owned by John Boyle Estate, was assessed at the triennial assessment made in the fall of 1926, for city tax purposes for 1927 at $75,000: Act of June 27, 1913, P. L. 568, Art. XV, sec. 4. This fixed the assessment for the years 1927, 1928 and 1929, except as it might be increased in the years succeeding the

triennial assessment by adding the value of new improvements, or decreased by depreciation caused by destruction of buildings: Act of June 27, 1913, P. L. 568, Art. XV, secs. 4, 5, 6. With the approval of the board of revision and appeals, the assessor might add to the duplicates in the hands of the city treasurer any subject of taxation omitted therefrom and rectify any and all errors and mistakes made therein: Act of June 27, 1913, P. L. 568, Art. XV, sec. 10; Act of May 27, 1919, P. L. 310, sec. 38—now superseded by Act of June 23, 1931, P. L. 932, Art. XXV; and the board of revision of taxes and appeals, consisting of the mayor and council, had the power and authority to revise, equalize and alter such triennial assessment, in any and every year, *on or before the first day of December in each year,* after which the assessment was to be copied into duplicate for the use of the city, and the assessment, so corrected and copied, was and remained the lawful assessment for the purpose of city taxation for the succeeding year and until altered as provided in the act: Act of June 27, 1913, P. L. 568, Art. XV, sec. 14—now superseded by Act of June 23, 1931, P. L. 932, Art. XXV, supra.

The duplicate so made out was to be delivered to the city treasurer on the first day of March of the year following the assessment by the assessor and its revision by the board of revision of taxes and appeals (Act of June 20, 1901, P. L. 578, as amended by Act of May 29, 1917, P. L. 315).

As respects school taxes, the city clerk is required "on or before the first day of April in each year, at the expense of the city, [to] furnish to each school district of the third class ...... for its use, to be retained by it, a properly certified duplicate of the last adjusted valuation of all real estate ...... made taxable in such school district," (Act of April 26, 1923, P. L. 102, amending section 541 of the School Code of

May 18, 1911, P. L. 309); and the proper school authorities are required to make out and deliver to the city treasurer, as school treasurer and tax collector, the school duplicates of their respective school districts of said city at the time and in the manner provided by law (Act of May 29, 1917, P. L. 315). The school board has nothing to do with the assessment until the city authorities furnish it the duplicate of the adjusted valuation of all assessable real estate, and it then levies the school taxes on the basis of the assessed valuation so furnished it.

The procedure in force at the time the taxes in question were payable is briefly and correctly summarized in the appellee's brief, as follows:

"1. The assessment is made by the assessor on or before September 1, or shortly thereafter.

2. The board of tax revision and appeals holds its hearings and completes the adjusted valuation by December 1, or shortly thereafter.

3. The city tax duplicate is prepared between December 1 and March 1, when it is delivered to the tax collector.

4. The city officials certify a copy of the last adjusted valuation to the school board on or before April 1st.

5. The school board levies its tax and issues its duplicate to the tax collector on or before July 1st for the collection of the taxes that are due and payable ...... on the valuation [so] adjusted."

After the triennial assessment for 1927, 1928 and 1929 had been made in 1926, and the board of revision of taxes and appeals had completed its hearings in 1927, and the city tax duplicate had been prepared for 1928, fixing the assessment of the Shenango Hotel at $75,000, the hotel building, on February 25, 1928, was destroyed by fire. The same day, Thomas M. Boyle, representing the defendant, petitioned the

members of the city council and the mayor of Sharon, who were meeting with the board of county commissioners, the latter sitting as a board of tax revision and appeal for the county assessments, for a reduction or abatement in his assessment because of the destruction of the building. The board of county commissioners sitting as a board of tax appeals for the county reduced the assessment for 1928 to $25,000. The board of revision of taxes and appeals for the city took no official action; but members of city council told Mr. Boyle that the city assessor, William B. Nightwine, would see him concerning the matter. A few days later Mr. Nightwine told him the assessment would be on the basis of $75,000 for two months and $25,000 for the balance of the year. The tax duplicate furnished the city treasurer and the duplicate furnished by the city clerk to the School District showed an assessed valuation of $75,000, and tax notices on that valuation and assessment for both city and school taxes were sent Mr. Boyle as Executor.

Subsequently the city tax duplicate was changed by a pen mark through "$75,000," as the assessed valuation of the Shenango Hotel and "$25,000" inserted in ink above, and above the tax of "$1200," as entered in the duplicate was written "$400" plus exoneration of "$800." This was noted as "Reduced by Wm. B.", presumably, 'Wm. B. Nightwine,' the city assessor; but the minutes of city council, acting either as a council or as a board of tax revision and appeals show no action taken authorizing the change, reduction or exoneration. Without such action, it is certain, the assessor would have no authority to make the change.

The duplicate furnished the School District by the city clerk showed an assessed valuation of $75,000. The duplicate furnished by the School District to the city treasurer, as tax collector for the School District,

showed a like assessed valuation of $75,000, and a tax was levied of $1,725, with no exoneration or reduction. Subsequently, some one, but without any legal authority, so far as the case stated shows, drew a pen line through "$75,000" and inserted above in ink "$25,000," with the notation "Ex. on acct. of fire, $50,000" below, and changed the tax figure from "$1,725" to "$575" and exoneration "$1,150." The case stated fails to state who did this or when it was done. No such reduction or exoneration was allowed by the school board.

In September 1928 Mr. Boyle went to the office of the city treasurer, who was also collector of taxes for the plaintiff school district and paid the taxes demanded of him, which were based on an assessment of $25,000, and receipts were given him based on such figure. The city has filed no lien or claim for any tax over and above the $400 paid; but the School District in July, 1929, demanded the unpaid balance of $1,150 and on defendant's refusal to pay filed this municipal lien for the same.

We need not discuss the question whether the city council and mayor acting as a board of revision of taxes and appeals could legally reduce the assessment made by the assessor and adopted by it in 1927, for the year 1928, after the tax duplicate had been prepared and furnished the city treasurer, because of the destruction of defendant's building by fire on February 25, 1928, for the case stated contains no averment that this was ever done. On the contrary, the case stated expressly states on the subject: "There are no minutes of any action taken by the city council or as a board of tax revision and appeals."

We have, then, in the case stated no statement of official action reducing the assessment from $75,000 to $25,000, taken by the city council or by the city board of revision of taxes and appeals. The duplicate

furnished by the city clerk to the School District certified to the valuation of defendant's property at $75,000. No adjusted valuation, reducing this to $25,000, was ever certified to the School District. The duplicate furnished by the school board authorities to the city treasurer, as school tax collector, fixed the assessed valuation at $75,000 and the tax at $1,725, and constituted the warrant to its tax collector to collect that amount as school taxes, and no exoneration having been made by the school board, the city treasurer acting as tax collector for the School District could not legally reduce the tax or accept any less or smaller sum in settlement of the tax so levied, (Central Penna. Lumber Co.'s App., 232 Pa. 191, 81 A. 204); and any change or alteration in the tax duplicate made by some unknown and unauthorized person would not affect defendant's liability for the full amount so levied and assessed.

The assignment of error is overruled and the judgment of the lower court affirmed.