## Philadelphia's Appeal.

Argued December 14, 1934.

Before KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD and PARKER, JJ.

*I. G. Gordon Forster*, with him *Mayne R. Long-
streth*, Assistant City Solicitor, and *David J. Smyth*,
City Solicitor, for appellant.

*Joseph Kaplan*, for appellee.

OPINION BY KELLER, J., March 13, 1935:
This is an appeal from a judgment on a case stated.
It has to do with the construction to be given the Act
of June 12, 1931, P. L. 548,[1] amending section 1 of the
Act of April 19, 1889, authorizing appeals from assess-

"Section 1. That any owner of real estate or taxable property in
this Commonwealth, who may feel aggrieved by the last or any fu-
ture assessment or valuation of his real estate or taxable property,
may appeal from the decision of the county commissioners, or board
of revision and appeal, to the court of common pleas of the county
within which such property is situated, and for that purpose may
present to said court, or file in the prothonotary's office, within sixty
days after the county commissioners or board of revision and appeal
have held the appeals provided for by law, and acted on the said
assessments and valuations, a petition signed by him, his agent or
attorney, setting forth the facts of the case, and thereupon the said
court shall proceed at the earliest convenient time to be by them
appointed, of which notice shall be given to the county commissioners

ments of taxes to the courts of common pleas, and providing for the payment of the taxes appealed into court and for the disposition thereof. Both of these acts were expressly repealed by the Act of May 22, 1933, P. L. 853,—see pp. 883(41) and 891(88)—, and superseded by Sec. 518 (p. 877) thereof, but as that act took effect only on September 1, 1933 (Act of May 17, 1929, P. L. 1808), it does not apply and as its provisions are practically the same as the laws then existing it was intended as a continuation of such laws and not as a new enactment (Sec. 105).

The facts as stated for the judgment of the court may be summarized as follows:

1. The board of revision of taxes fixed the assessment for taxes for the year 1933 on premises 230 S. Hanson Street, Philadelphia, at $90,000. The owner, Mollie Kaplan, on January 5, 1933, appealed to the court of common pleas, the appeal being filed to No. 5285, December Term 1932 of Common Pleas No. 2.

2. On June 29, 1933, Mollie Kaplan paid to the prothonotary of the court $2,497.50, the full amount of the taxes assessed, calculated on said assessment of $90,000. The following notation was made by the pro-

---

of the proper county, or to the board of revision and appeal of the proper city to hear the said appeal, and the proofs in the case, and to make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable, having due regard to the valuation and assessment made of other real estate in such county or city; the costs of the appeal and hearing to be apportioned, or paid as the court may direct: Provided, however, That the said appeal shall not prevent the collection of the taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same: And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from into the court to which such appeal is taken; whereupon said court shall allocate and pay over to the proper authorities such amount of said tax as shall appear to said court to be reasonably free from dispute, and the remainder of the amount paid in shall be held by the court pending the final disposition of the appeal."

thonotary on the docket to said number and term: "June 29, 1933. $2,497.50 paid into court as per Act 1931, P. L. 548."

3. No notice of such payment to the prothonotary was given to the receiver of taxes, the School District of Philadelphia, the board of revision of taxes or the city solicitor, other than such, if any, as might be inferred from the entry of record. At the time the payment was made to the prothonotary no application was made to the court, nor did the court allocate and direct to be paid over to the proper authorities such amounts "as shall appear to said court to be reasonably free from dispute," as directed by the Act of 1931, supra. It does not appear in the case stated whether Mollie Kaplan in taking her appeal, complied with the Act of 1889, as amended by the Act of 1931, supra, and filed a petition signed by her or her agent or attorney, setting forth the facts of the case, as directed by said act, or if she did, what valuation, if any, she placed as the fair and reasonable value of said real estate for taxation purposes. As it does not appear in the case stated we cannot assume it: School Dist. of Sharon v. Boyle Est., 114 Pa. Superior Ct. 416, 174 A. 915; Richardson v. First Brethren Church, 314 Pa. 423, 171 A. 897.

4. Said appeal came up for hearing before said court and on January 16, 1934, the court entered a decree nisi, which was made final on February 1, 1934, sustaining the appeal and fixing the fair market value of the property for taxation for the year 1933 at $85,000; and directing the City of Philadelphia to pay the costs. At the time of the hearing neither the court nor counsel for the city and school district were informed of the payment made by Mollie Kaplan to the prothonotary, and of the costs in connection therewith.

5. On February 1, 1934, in pursuance of a petition and decree presented by counsel for Mollie Kaplan, without notice to opposing counsel, the court directed the prothonotary to distribute said fund of $2,497.50 previously paid him, as follows:

To Mollie Kaplan, $138.75, being the amount of the tax paid on the $5,000, reduction of assessment.

To Joseph Kaplan, her attorney, $5.75, being the statutory attorney's fee and cost of filing the appeal.

To the prothonotary, $36.10, being composed of docket costs, $6.12, and poundage, $29.98.

To the receiver of taxes for Philadelphia, $2,316.90, being the taxes on $85,000 valuation, $2,358.75, less costs and poundage as above $41.85.

6. The receiver of taxes, school district, board of revision of taxes and city solicitor had no notice of such petition and decree of distribution until February 5, 1934, apart from such, if any, as might be inferred from the entry of record. On that date the prothonotary requested the city solicitor to sign a receipt for $2,316.90 called for by said decree.

7. The payment to the prothonotary on June 29, 1933 was made two days before the first penalty on 1933 taxes came due on July 1, 1933. Under the statutes and ordinances relating to 1933 taxes, one per centum a month was added thereto for nonpayment on the first days of July, August, September, October, November and December 1933 and January and February 1934, and interest at the rate of six per centum per annum began on January 1, 1934.

8. As of February 5, 1934, when the prothonotary presented to the city solicitor his check for $2,316.90 the taxes for 1933 on said premises at the reduced valuation of $85,000 were, as computed by the receiver of taxes according to the statutes and ordinances aforesaid, as follows:

| | | |
|---|---|---|
| City tax registered ....... | $1,659.98 | |
| Interest ............... | 16.60 | |
| Penalty ............... | 16.60 | $1,693.18 |
| | | |
| School tax registered ..... | 864.02 | |
| Interest ............... | 8.64 | |
| Penalty ............... | 8.64 | 881.30 |
| | | |
| Total ..................... | | $2,574.48 |

9. The receiver of taxes received said payment of $2,316.90 and credited the same on account of the amount shown due as aforesaid, after agreement of counsel for all parties in interest that such receipt should be without prejudice to the legal right of any party in interest.

10. The difference between $2,574.48 and $2,316.90, to wit, $257.58, consists of interest and penalties on the reduced assessment in the total amount of $215.73; prothonotary's commission or poundage charges, $29.98; prothonotary's docket costs, $6.12; costs due Mollie Kaplan's counsel, $5.75.

The question submitted to the court for its determination was: "Did the payment to the prothonotary, as of the above court, term and number, under the facts as above set forth, on June 29, 1933, of the sum of $2,497.50, stop the running of interest and penalties imposed by statute and ordinance on real estate taxes, city and school, for the year 1933, on the reduced assessment of $85,000?" If decided in the affirmative then judgment to be entered in favor of Mollie Kaplan, that payment of the sum of $2,316.90 was in full satisfaction of city and school taxes for 1933 on 230 S. Hanson Street. If decided in the negative, then judgment to be entered in favor of the City of Philadelphia and School District of Philadelphia in the sum of $215.73, the interest and penalties aforesaid, together with the prothonotary's poundage charges of $29.98.

The court entered judgment on the case stated in favor of Mollie Kaplan. The City of Philadelphia has appealed.

It is unquestionably the law that "tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law": Husband's Est., 316 Pa. 361, 369, 175 A. 503. But it is equally well settled that where taxes, including interest and penalties, are clearly imposed by law, he, who would claim an exemption or relief from them, when so legally imposed, must point to clear and unmistakable warrant of law to support his claim; he is entitled to no special privilege over other taxpayers which is not clearly and definitely established by law. The case stated admits that under the law in force at the time one per centum a month would be properly added as a penalty for non-payment of taxes for 1933 on the first days of July, August, September, October, November and December 1933 and January and February 1934, and that interest on unpaid taxes for 1933 would legally be demandable from and after January 1, 1934. There is no question of the clear warrant of law for the imposition of such penalty and interest. See Act of April 19, 1883, P. L. 9, sec. 13. The inquiry here is, did the payment by Mollie Kaplan of the sum of $2,497.50 to the prothonotary, in the circumstances above recited, constitute such a payment to the city as to relieve the taxpayer, Mollie Kaplan, of liability for the penalty and interest aforesaid? The learned judge, who wrote the opinion of the court below, was of opinion that "payment of the taxes into court is made by the act the equivalent of paying them to the city, especially since it is made the duty of the court, when the tax is paid in, to allocate and pay over to the city the amount that does not appear to be in dispute." But the act does not say so. Certainly, in practical effect,

mere payment into court is not the equivalent of payment to the city. The city cannot pay its bills and running expenses with money lying dormant in the prothonotary's office or in the court depository. If not forthcoming as needed, the city must borrow and pay interest on the money which the taxpayer has not paid to it. Under the Act of 1889, supra, the taxpayer, who has appealed, may effectually stop the running of interest and the addition of penalties by paying the tax, as assessed, to the city, and in case the assessment is reduced, "then the excess shall be returned to the person or persons who shall have paid the same," with interest from the date of demand for repayment: Phila. & Reading C. & I. Co. v. Tamaqua Boro. School Dist., 304 Pa. 489, 156 A. 75. Of course, in such case no penalty or interest is chargeable against the taxpayer, for he actually made payment to the city before any penalty or interest accrued. But as suggested by the lower court, injustice and inconvenience may have resulted from this system, because of practical difficulties in securing a refund in such circumstances, and the Act of 1931 was passed as an additional or alternative remedy open to the taxpayer who has appealed from an assessment. In construing its provisions, however, it is necessary to pay due heed to the needs and requirements of the city, and not interfere, further than is clearly provided in the act, with the collection by the city of the taxes necessary for its maintenance. The provision in the amending act, "whereupon [that is, immediately after, (Shorter Oxford Dictionary (3) ) the payment of the money into court] said court shall *allocate and pay over to the proper authorities such amount of said tax as shall appear to the said court to be reasonably free from dispute,* and the remainder of the amount paid in shall be held by the court pending the final disposition of the appeal" [italics supplied], contemplates, in our view, some-

thing more than the mere payment of the tax as assessed to the prothonotary, without any notice thereof to the court or the taxing authorities. The entry of such payment on the docket is no notice at all. No provision of the law gives it the effect of constructive notice. We think the language of the amending act, taken as a whole, contemplates the usual method of payment into court on petition (Acts of May 4, 1927, P. L. 519, sec. 1415; May 10, 1927, P. L. 884, sec. 3; May 23, 1919, P. L. 262, sec. 3; May 3, 1909, P. L. 388, sec. 3; June 4, 1901, P. L. 431, sec. 25; June 2, 1891, P. L. 172; March 12, 1867, P. L. 35, sec. 1), which petition shall set forth the appellant's valuation of the premises, so that the 'amount of said tax reasonably free from dispute' may be readily determined by the court, or if that already appears in the petition on appeal which the act directs the appellant to file, a reference to the same, so that the court may at once fix and determine the amount to be allocated and paid over to the proper authorities. It is not reasonable to conclude that the legislature, which was careful to protect the city's interests by directing that, at once, upon payment of the money into court, the latter should allocate and pay over to the proper authorities such amount of the tax as should appear to the court to be reasonably free from dispute, intended to sanction a payment to the court's clerk, without any notice to or knowledge by the court, and without supplying the court with the information needed to make the prompt allocation and payment over which it commanded. This duty rested on the appellant taxpayer and on nobody else. The court cannot be blamed for not doing what the legislature directed it should do, until it had notice or knowledge that a payment into court was contemplated. The taxing authorities were not derelict, for no notice had been given them that the appellant taxpayer intended to avail herself of the alterna-

tive remedy offered her by the Act of 1931. Under the Act of April 19, 1883, P. L. 9, sec. 2, relating to the collection of taxes in cities of the first class, although the tax was overdue and subject to penalty, nevertheless it was not *delinquent,* in the sense that payment of it could be *enforced,* until January 1, 1934: Pusey's Est., 299 Pa. 325, 149 A. 479; thus distinguishing the case from the decision in Ferguson v. Pittsburgh, 159 Pa. 435, 28 A. 118, where the collection of the taxes appealed from could have been enforced by the City of Pittsburgh at the end of the month in which they were payable (Act of March 22, 1877, P. L. 16).

The Act of 1931, supra, was for the relief of the taxpayer, but it was not intended to create a hardship to the city nor interfere with the collection of the taxes needed by the city to carry on its government. If possible, it should be so construed as to benefit the taxpayer without injuring the city. It can be, by interpreting it as above. The taxpayer has only herself to blame if she is required to pay the penalty and interest, due under the law to the city, for she could have avoided it, at least to the amount 'reasonably free from dispute' by presenting her petition to pay the money into court and setting forth the facts necessary to permit the court to carry out the consequent directions of the statute. As the case stated is drawn, we need not decide more than this.

The assignment of error is sustained. The judgment is reversed and is hereby entered, in accordance with the case stated, in favor of the City of Philadelphia and School District of Philadelphia and against Mollie Kaplan in the amount of $215.73, with interest from August 23, 1934, together with the prothonotary's commission or poundage charges of $29.98. Costs on this appeal to be paid by appellee.