## The Pennsylvania Company, etc., v. North Seventh Street Savings & Loan Assn.

*Saul, Ewing, Remick & Harrison*, for plaintiff.
*George V. Turner*, for defendant.

WINNET, J., November 8, 1943. — This is a suit against the real owner to recover taxes paid by the mortgagees. The defense is that since the taxes were not delinquent when paid the mortgagees were mere volunteers and cannot recover.

Plaintiffs held a first mortgage of $3,000 secured on premises 3945 North Tenth Street, Philadelphia, and acquired the property by foreclosure proceedings on March 10, 1942. On September 12, 1941, plaintiffs "in order to protect their interest" paid the 1941 real estates taxes of $76.99 assessed against the mortgaged premises, and on March 31, 1942, paid $68.31, the 1942 taxes. These payments were not from rents collected as mortgagee in possession. To plaintiffs' suit to recover these taxes defendant filed a statutory demurrer asserting that, since the taxes were not delinquent at time of payment, and since the city itself could not have brought suit to recover them at that time, plaintiffs were mere volunteers and could not recover from defendant.

The city is limited by statute in suits to recover taxes. The Act of April 16, 1845, P. L. 495, 53 PS §4962, gave the treasurer of Philadelphia authority to enforce payment of taxes. By a later act this power was transferred to the receiver of taxes. By the Act of July 21, 1913, P. L. 863, sec. 1, 53 PS §4874, the books of the receiver of taxes are to be closed on December 31st of the taxable year and thereafter a reg-

istry of delinquent taxes is to be prepared. It is only as to those persons who are listed in this registry that the receiver of taxes may act. The Acts of April 21, 1858, P. L. 385, sec. 2, 53 PS §4911, and April 19, 1883, P. L. 9, sec. 2, 53 PS §4916, relate to enforcement of the city's right to collect taxes and limit such right to taxes that are registered as delinquent. In The Penna. Co., etc., Trustee, et al., v. Zussman, 122 Pa. Superior Ct. 325, 329, President Judge Keller said:

"Taxes are not delinquent in Philadelphia until after the end of the year for which they were levied; taxes then unpaid are returned and registered as delinquent on or before January 15th, of the year following the year they were payable . . . But while they are current taxes—that is during the entire year following their assessment and levy—neither the city nor the school district can force their collection by distress, levy or lien or do more than impose the additional percentages authorized by the Act of 1861, P. L. 354, to be added to the current taxes before they become delinquent. (Pusey's Estate, 299 Pa. 325, 329)."

The statutes, however, provide merely the machinery by which the city is to collect taxes. They have nothing to do with the creation of the liability itself. This is created by the taxing statute and when the tax comes into being it carries with it personal liability. When it becomes delinquent, it merely sets in operation machinery for its collection. In The Penna. Co., etc., Trustee, v. Bergson, 307 Pa. 44, 49, it is stated:

"Personal liability for taxes is an incident to ownership of land. In Shaw v. Quinn, 12 S. & R. 299, it is stated without reference to any statute: 'The persons charged in the duplicate are personally liable for the tax, and their bodies may be taken in execution if no goods and chattels are to be found.' See Burd v. Ram-

say, 9 S. & R. 109. The Act of 1845, P. L. 496, declares in section 4, that, in order to carry out the other provisions of the act, the taxing authorities 'shall have the power to bring suit . . . against the person or persons returned and registered in the register of unpaid taxes on real estate . . . and shall . . . obtain judgment in favor of the county, . . . which judgment shall have the same effect, to all intents and purposes, as judgments in other cases.' By the Act of February 3, 1824, 8 Smith Laws 189, taxes had previously been declared to be a lien on the property on which they were imposed; and the Act of 1845 can be considered in no other light than imposing a personal charge against the owner. Many of our cases speak of personal liability for taxes without referring to any statute. It is clear from the principles in these cases and the legislative declarations that the owner of land is and should be personally liable for taxes assessed while he is the owner of the property."

The real owners were, therefore, personally liable for the taxes. And the question resolves itself into whether plaintiffs, the mortgagees, were mere volunteers when they paid and not entitled to be subrogated to the rights of the city against the owners of the premises.

In the reported cases involving subrogation claims for taxes there seems to be none that involves a suit for nondelinquent taxes. But is a mortgagee who pays the tax after it is delinquent less of a volunteer than one who pays it before? In each case he pays it not because he is personally liable but to protect his lien on the property. In both cases he pays it to prevent accumulation of penalties. In both cases he pays it *then* because he would have to pay it *later* with penalties and interest. In both cases he pays it to protect his interest in the property. A payment under such circumstances does not constitute him a volunteer. A person is defined as a "mere volunteer or inter-

meddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another . . .": Home Owners' Loan Corp. v. Crouse et al., 151 Pa. Superior Ct. 259, 262; Beck et al. v. Beiter et al., 146 Pa. Superior Ct. 114, 120.

A. L. I. Restatement of Restitution, in discussing subrogation, section 162, says a person who discharges an obligation owed by another and "does so officiously" is not entitled to reimbursement. By no means was the payment of taxes by plaintiffs an officious payment. It was not the act of intermeddling outsiders. They had a vital interest along with defendant in these premises and an act calculated to protect that interest is not an officious act.

It may very well be that plaintiffs could not have brought suit immediately upon payment of the taxes. The right to which they had been subrogated would also have been limited by the remedy provided by a statute. Subrogation proceeds under equitable principles. Since the city could not have brought suit neither could plaintiffs. In section 77 of the Restatement of Restitution, it is provided, as to a person who discharges a duty which should have been discharged by another "before the time for performance, his right to indemnity arises at the time for performance."

No possible interest can be served by denying plaintiffs the right to recover the payment of taxes which were the legal obligation of the real owner, the defendant. The taxes were assessed on the first of the year and became due immediately. The property owner is, however, given leeway about payment. Nevertheless, prompt payment of taxes is of great help to the city and if a mortgagee desiring to protect the property and avoid possible penalties pays the tax promptly he should not be penalized by being refused his subroga-

tion right against the party who should have paid it.

The statutory demurrer is, therefore, dismissed. Defendant is granted leave to file an affidavit of defense upon the merits within 15 days.