## Smith's Appeal

*Randolph Stauffer*, for appellant.

*Alan M. Hawman, Jr.*, assistant city solicitor, contra.

MAYS, J., July 16, 1945.—Appellant is the owner of two contiguous lots of unimproved real estate situate on the west side of Clinton Street north of the Lebanon Valley Branch of the Reading Company, in the City of Reading, containing 10 acres and 5 acres, respectively.

The triennial assessment of 1942 for the years 1943, 1944 and 1945, placed a valuation on the 10-acre tract of $18,000, and on the five-acre tract of $9,000. There was no appeal from said assessment.

On September 1, 1943, appellant notified the City Assessor of the City of Reading that substantially all of the marketable slag upon the premises had been removed, and asked for a reduction on the assessments of the two tracts for 1944 and 1945. The city assessor refused to reduce said assessments. Subsequently, on November 23, 1943, appellant appealed from the said assessments. On December 16, 1943, the appeals were dismissed and the assessments approved; whereupon appellant took these appeals.

The question in this case is whether the removal of a slag bank located on the two properties involved in the appeals in the first half of the year 1943 was a destruction of or injury to the real estate such as to require a reduction in the assessments in a year other than a triennial year.

Article XXV, sec. 2506, of the Third Class City Law of June 23, 1931, P. L. 932, 53 PS §§2198-2506, states:

"In the years between triennial assessments, the said assessor shall perform the following duties with reference to the assessment of property and other matters and subjects of taxation, namely: He shall, . . . (d) deduct from the value of any property any depreciation caused by destruction, injury, or otherwise, howsoever."

This provision must be read in connection with those provisions of the law then existing which allow abatements for specified causes.

The Supreme Court, in Central Penna. Lumber Company's Appeal, 232 Pa. 191, and again in Susquehanna Collieries Company's Appeal, 338 Pa. 366, has discussed these related acts of assembly. Justice Barnes in the last cited case said (at p. 370):

"Under the General County Assessment Law, real estate is assessed for taxation every three years, except in counties of the first class. By this method of triennial assessment the valuation placed on taxable property in the triennial year, must remain unchanged during the two succeeding years, except in those instances where the legislature has specifically provided for alteration."

He then points out that section 432 of The General County Assessment Law of May 22, 1933, P. L. 853, requires the assessor to note in the return "such alterations . . . as may have been occasioned by the transfer or division of real estate, or by the destruction of buildings, or by the mining out of coal, ore, or other minerals . . . ; and to reassess all real estate which may have been improved by the erection of buildings or other improvements subsequent to the last preceding triennial assessments . . .".

Accordingly, except for the reductions allowed by the legislature for the causes specified, the triennial assessment remains undisturbed for the three-year period. What then was the situation of appellant in 1943? He makes no claim for an abatement by reason of the destruction of buildings or other improvements, nor on the ground of coal, ore, or other minerals having been "mined out" since the last triennial assessment. He raises no question as to the regularity or validity of the triennial assessment. After the assessment of the two tracts had been fixed for the three-year period, appellant or his predecessor in title removed a slag bank from the land and thus depreciated the market value of the lots. Slag is no mineral or ore mined out of the land. It is something that was placed upon the land. It is a combination of limestone, iron and impurities thrown off in the process of reducing from ore to iron, and is drawn off from the surface of the molten flux as a fiery liquid which is customarily removed in

large steel ladles and poured out in a molten state upon the land adjacent to the furnace.

We find no statute that authorizes abatements to be made for the removal of slag in the two years succeeding the triennial assessment, and therefore there is no authority to grant relief to the taxpayer on this ground.

In Central Penna. Lumber Company's Appeal, supra, appellant company cut and removed hemlock timber and bark from a large number of acres and thus depreciated the market value of the lands. All this was done after the valuations had been returned by the local assessors and the county commissioners, sitting as a board of revision, had passed upon and equalized the assessment. In other words, there had been a completed assessment before the timber was removed. Justice Elkin, at p. 197, used these significant words:

"The statutes do not authorize abatements to be made for timber removed in the two years succeeding the triennial assessment, and therefore there is no authority to grant relief on this ground. Hardships may sometimes result from the enforcement of this statutory rule, but substantial benefits are frequently derived. Lands as frequently appreciate as depreciate in value during the three-year period. When they appreciate in value the taxpayer has the benefit on his side; when they depreciate the advantage is with the county, but in a series of years the advantages and disadvantages will be substantially equalized. As an illustration, after the timber had been removed in 1908, suppose oil in large quantities had been discovered on these lands, their value would have been increased three, four, five or maybe ten fold, but the valuation would have remained the same until the next triennial assessment. In such a case the advantage would be on the side of the taxpayer. Under such circumstances the county would be as powerless to increase the valuation

during the two succeeding years as is the taxpayer to have it reduced except for statutory causes.

"In the discussion of this question, Judge Cooley in his work on Constitutional Limitations (6th ed.), p. 631, makes use of the following language: 'So the man who owns property when the assessment is taken may have been deprived of it by accident or other misfortune, before the taxes become payable, but the tax is, nevertheless, a charge against him. And when the valuation is made but once in a series of years the occasional hardships and inequalities in consequence of relative changes in the valuation of property from various causes, become sometimes very glaring. Nevertheless, no question of constitutional law is raised by these inequalities and hardships, and the legislative control is complete.' These observations of the learned jurist are a complete answer to the contentions of appellant in the present case. The hardships complained of and the equities insisted upon grow out of conditions over which the taxing authorities have no control. The legislature, and not the courts, must authorize the relief to be granted if it be deemed expedient to do so."

See also School Dist. of the City of Sharon v. John Boyle Estate, 114 Pa. Superior Ct. 416.

The appeal must be dismissed, and accordingly it is so ordered.