# American Steamship Co. *versus* Young.

1. A public officer who by virtue of his office demands and takes unauthorized or illegal fees may be compelled to make restitution, and where such fees are paid to such officer, without protest or notice of intention to reclaim, it is not a voluntary payment.

2. Where a United States shipping commissioner charges a seaman who has paid the shipping fee an additional fee every time he re-ships on the same vessel, for successive subsequent voyages, such charge is unauthorized by the Acts of Congress, and the fees thus named may be recovered back in an action of assumpsit.

3. State courts can entertain suits against federal officers for acts done by virtue of their office.

February 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county* : Of January Term 1877, No. 223.

[American Steamship Co. *v.* Young.]

Case by the American Steamship Company against John H. Young, in which a case was stated, in substance, as follows: Young is the United States Shipping Commissioner at Philadelphia. The plaintiff is a corporation and the owner of a line of steamships sailing between Philadelphia and Liverpool. The men constituting the crews of the steamships of said corporation were shipped before said Young as shipping commissioner. For each round voyage, said commissioner has charged for each man shipped at Philadelphia the sum of $2, renewing said charge of $2 upon each reshipment on the same vessel. The payment of said fees was claimed by color of his office as shipping commissioner. The total number of men shipped before defendant was 6136. Of this number 2439 were seamen who reshipped and sailed from Philadelphia, on the next succeeding voyage of the same steamship in which they had returned to Philadelphia, from a voyage for which they had previously shipped before said commissioner, and for which men defendant had demanded and received $4878, being a fee of $2 for each man so reshipped. These payments were made from time to time on bills rendered by defendant and in which said charge was made for every man reshipped. A demand had been made for the return of said $4878, which had been refused. If upon these facts the court were of opinion that under the statutes of the United States, the commissioner was not entitled to the fee of $2 for the reshipping members of a crew, then judgment to be entered for plaintiff, if not then for defendant.

The court, Biddle, J., in an opinion said:—

" We do not think it necessary for the decision of this case to construe the laws of the United States relative to the shipment of merchant seamen. As it is not necessary, we prefer to leave them to the tribunal of the United States, with whom they are a subject of constant study and adjudication.

The case stated admits that the fees were claimed in good faith, under a clause in the Shipping Act, and that they were paid without protest or remonstrance. The question, therefore, which is raised for our adjudication is, can these fees be reclaimed in a suit instituted in our court under the laws of Pennsylvania.

" The general principle that a voluntary payment, made with a full knowledge of the facts but in ignorance of the law, cannot be recovered by the party making it is not controverted, but it is contended that fees paid in consequence of a demand by a public officer, *virtute officii*, are not to be treated as voluntary payments.

" In regard to this there seems to be a well-marked distinction between exactions by a public officer, as in Ogden *v.* Maxwell, 3 Blatchf. 319, which are wilful wrongs, and demands under a mistaken view of the law—between money corruptly obtained under color of office, and that improperly levied under color of law. To the first class of cases the one now submitted does not belong. It

[American Steamship Co. *v.* Young.]

is not alleged that the money was obtained by deceit or unfair practices. In regard to the latter, the two cases of the Borough of Allentown *v.* Saeger, 8 Harris 421, and Taylor *v.* The Board of Health, 7 Casey 73, seem very much in point. In the Borough of Allentown *v.* Saeger, a borough tax, part of which was legal and part illegal, was paid by the person assessed to the tax collector without protest or notice at the time that he would reclaim the part illegally assessed, and it was held he could not recover it. Here, it will be observed, the suit was against the borough, who actually held the money and not against the tax collector, who might or might not have paid it over. Judge LOWRIE says, in delivering the judgment of the court: 'The taxing officers performed their duty as well as they knew how, and the tax was submitted to by one who was interested in the purpose for which it was raised, though it might have been resisted in legal form.' In Taylor *v.* The Board of Health, the action was against the board of health, the executive officer of the state, who collected the tax and expended it for purposes designated by law, as in the present case; the court there decided: 'That the plaintiff paid without dispute, and thus assented to the collection of the tax for public purposes and, of course, to the application of it, and he has no shadow of equity against the collecting functionary.' And they further say expressly: 'We state the case as one of a voluntary payment of taxes because there is no pretence that the defendant's officers did any more than demand the tax under a supposed authority of the law, and this is no more a compulsion than where an individual demands a supposed right. The threat that is supposed to underlie such a demand is a legally harmless one—that in case of refusal the appropriate legal remedy will be resorted to.

"In the case submitted to us, the plaintiffs from the nature of their business would be quite as likely to understand the provisions of the law as the defendant, and their paying for three years without objection, what they now allege to be illegal charges, was calculated to induce the defendant to persist in the construction of the law which they acquiesced in and to collect the same tax from others.

"We think, therefore, that the payments made in this case were 'voluntary payments,' which, under the Pennsylvania decisions, cannot be recovered. Judgment is therefore entered for the defendant on the case stated, with costs."

The plaintiff took this writ and assigned this action for error.

*Morton P. Henry*, for plaintiff in error.—There is a distinction between the fees of public officers and taxes or public dues, and the right to recover the latter, when paid without protest, is denied upon the ground that the officer pays them into the public treasury for public purposes: Taylor *v.* Board of Health, 7 Casey 73. The

[American Steamship Co. *v.* Young.]

fees charged by public officers are never paid voluntarily, but can be recovered if illegal: American Fire Ins. Co. *v.* Britton, 8 Bosw. 148; Ogden *v.* Maxwell, 3 Blatch. C. C. 319; Steele *v.* Williams, 20 Law & Eq. R. 319; Morgan *v.* Palmer, 2 B. & C. 729; Baker *v.* City of Cincinnati, 11 Ohio 534; Drew *v.* Parsons, 2 B. & Ald. 562; Walker *v.* Ham, 2 N. H. 238; Lasalle County *v.* Simons, 5 Gilman 513.

A penalty in Pennsylvania may be recovered for taking illegal fees, although the officer thought they were legally demandable, and acted without corrupt intent: Coates *v.* Wallace, 17 S. & R. 75. It is only in an indictment that the act must be shown to be wilful, fraudulent and corrupt: Miller *v.* Lockwood, 5 Harris 248.    State courts have jurisdiction to recover excessive fees or charges exacted by officers of United States by color of office: Ripley *v.* Gelston, 9 Johns. 201; Claiton *v.* Strong, Id. 248; Slocum *v.* Mayberry, 2 Wheat. 1.

*Henry Flanders*, for defendant in error.—It was obviously the purpose of the act to allow a vessel, on her return to a port of the United States, to reship her crew and proceed on *one other* voyage, without the payment of additional fees to the shipping commissioner, and this to be the end and fulfilment of the privilege accorded to her by the law.    Does not the act find its application in that numerous class of cases where a vessel is chartered for two successive voyages, and where the two voyages are regarded as an entirety, and where for the second voyage the shipowner may well be relieved from the payment of additional fees to the shipping commissioner?

It is admitted that an officer is liable if he takes money *mala fide;* but where there is no fraud or imposition, actual or legal, there is no ground either in law or equity to reclaim money paid voluntarily under a claim of right.    This is the well settled law of Pennsylvania: Good *v.* Herr, 7 W. & S. 253; Ege *v.* Koontz, 3 Barr 109; Taylor *v.* Board of Health, 7 Casey 73; Finnel *v.* Brew, 31 P. F. Smith 362; Federal Ins. Co. *v.* Robinson, 1 Norris 357.    In all the cases cited by the plaintiff in error the money was paid under protest, and they were cases of fraudulent exaction. Here there was no protest nor exaction.    For three years the parties agreed in their construction of the law, and the defendant in error confidently submits that that construction was the true one; that he was entitled to demand these fees; that the plaintiff in error was right in supposing them to be due, and paying them; and that it was not and could not be the intention of the Act of Congress to make the shipping commissioner perform the same duties in respect to *every* voyage of a ship, and allow him compensation in respect to only one voyage.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

[American Steamship Co. *v.* Young.]

The case stated in the nature of a special verdict fully presents the facts upon which the judgment of the court below was based. The questions submitted for determination were, whether, upon the admitted facts, the defendant, as shipping commissioner under the Act of Congress, was entitled to demand and receive from the company plaintiff a fee of $2 for reshipping members of the crew of its vessel for the next voyage, after the return of the same vessel to the port of Philadelphia; and, if not, whether the plaintiff was entitled to recover, in this suit, the fees so demanded and paid?

The learned judge deemed it unnecessary to express any opinion as to the first, for the reason that the law of the case, as he viewed it, was conclusively against the plaintiff on the second question. It was his opinion that the payments in question were *voluntary*, made with a full knowledge of the facts, and, therefore, assuming that they were made in ignorance of the law, there could be no recovery.

The United States Shipping Act of June 7th 1872, passed for the protection and benefit of merchant seamen, provides for the appointment of a shipping commissioner, who, before entering on the duties of his office, is required to give bond with sureties in not less than $5000, take and subscribe an oath to support the constitution, and discharge his duties to the best of his ability and according to law. The powers with which he is clothed are commensurate with the important duties he is required to perform. Section 4511, Revised Statutes, provides that "the master of every vessel, bound from a port in the United States to any foreign port, other than vessels engaged in trade between the West India Islands or the Republic of Mexico, or any vessel of the burthen of seventy-five tons or upwards, bound from a port on the Atlantic to a port on the Pacific, or *vice versa*, shall, before he proceeds on such voyage, make an agreement in writing or print, with every seaman whom he carries to sea as one of the crew," in the form specifically prescribed by the statute. The next section requires every such agreement to be signed in duplicate by each seaman in the presence of the commissioner, who shall retain one part, and the other shall be delivered to the master of the vessel. The next section declares that section 4511, above quoted, "shall not apply where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage, nor to the masters of coastwise, nor to the masters of lake-going vessels that touch at foreign ports; *but seamen may, by agreement, serve on board such vessels a definite time, or, on the return of a vessel to a port in the United States, may reship and sail in the same vessel on another voyage, without the payment of additional fees to the shipping commissioner by either the seamen or the master.*" The statute also provides that the commissioner shall be entitled to receive a fee of $2 each for engaging, and fifty cents each for discharging the crew, to be paid by the owner, consignee, agent or master of the vessel who is

[American Steamship Co. *v.* Young.]

authorized to reimburse himself in part by afterwards deducting from the voyage of each seaman twenty-five cents for each fee so paid. It is also required that the commissioner "shall cause a scale of the fees payable to be prepaid, and to be conspicuously placed in the shipping office, and may refuse to proceed with any engagement or discharge, unless the fees payable thereon are first paid." If the fees and emoluments exceed $5000 per annum, such excess is required to be paid into the treasury of the United States.

As to the rights of the commissioner to the shipping fees in dispute, the question arises under the last clause of section 4511, above quoted and italicised. There appears to be little if any room for doubt as to the meaning of the statute. It provides in express terms that a seaman who, on the return of any vessel to a port in the United States, reships and sails in the same vessel on another voyage, may do so "without the payment of additional fees to the shipping commissioner by either the seaman or the master; and we have no doubt this provision applies as often as he may reship on successive subsequent voyages. It appears that the right of the commissioner to demand the shipping fee is thus limited to new members of a crew who are procured through the agency of his office, thus exempting those who voluntarily continue in the ship's service. This discrimination, in favor of the latter class, may have been made for the purpose of encouraging a more steady and continuous service, and at the same time making it to be the interest of masters to so treat their crews as to induce them to remain in the service of the vessel; but if the language of the statute, fairly construed, means what we think it does, it is not necessary that a satisfactory motive for the distinction should appear. Nor is it any objection to this construction that it deprives the commissioner of compensation for reshipping the favored class. He is clearly entitled to the fee for the first shipment and every reshipment that does not come within the exemption of the act; and to the discharge fee in every case. Congress doubtless considered that this would afford ample remuneration for all services required. Without pausing to notice the construction contended for by the defendant, we are of opinion that, on the first question, the law is with the plaintiff; that no warrant can be found for demanding the fees in question, and, therefore, they were illegally demanded.

As to the second question, the right of the plaintiff to recover in this action for the fees so improperly demanded and paid, it is, perhaps, not quite so clear; but, we think, that sound public policy requires us to hold that a public officer who, *virtute officii*, demands and takes as fees for his services, what is not authorized or more than is allowed by law, should be compelled to make restitution. He and the public who have business to transact with him do not stand upon an equal footing. It is his special business to be conversant with the law under which he acts, and to know precisely how much he is

[American Steamship Co. *v.* Young.]

authorized to demand for his services; but with them it is different. They have neither the time nor the opportunity of acquiring the information necessary to enable them to know whether he is claiming too much or not; and, as a general rule, relying on his honesty and integrity, they acquiesce in his demands. Hence it is that for the official wrong of taking illegal fees, a statutory penalty is provided in favor of the party aggrieved. Nearly all the precedents we have in this state are cases of this nature, and while much that has been said, in deciding cases of this class, must be regarded as mere *dicta*, it still indicates the personal views of distinguished judges on the subject.

In Prior *v.* Craig, 5 S. & R. 44, Justice GIBSON says: "It is true an action of assumpsit to recover back fees illegally taken may be sustained against a justice of the peace, without giving him notice, for the plaintiff thereby waives the official tort, as he may well do, and goes only for the money extorted." To the same effect is Walker *v.* Ham, 2 N. H. 238. Again, in Reed's Adm'r *v.* Cist, 7 S. & R. 183, in which the action was by the personal representative of the injured party for the statutory penalty, the court remarked, "The plaintiff could recover back anything beyond the legal fees, but not for the forfeiture or penalty." In an action by a sheriff for fees, the defendant was allowed to set off former fees illegally demanded and paid to the plaintiff; and, in so ruling, the court said, that if the defendant paid more money to the sheriff than he was entitled to demand, he cannot, upon any grounds of either law or equity, retain it: Dew *v.* Parsons, 2 B. & Ald. 562.

In Steel *v.* Williams, 8 Exch. Rep. 625, it is said by one of the judges that "any person who illegally takes money under color of an Act of Parliament, is liable to be sued for it, though the money is not to go into his own pocket." The language of Judge Woodruff in The Fire Ins. Co. *v.* Button, 8 Bosw. 148, is in point. He says, in sustaining an action against a public officer for money illegally demanded and paid, "It should be deemed sufficient that the officer takes advantage of his official position to make the exaction; due protection to those whose necessities require them to deal with persons exercising official powers, or discharging duties in their nature official, requires that moneys so paid should be the subject of reclamation." The case of Ogden *v.* Maxwell, 3 Blatch. 319, is perhaps more nearly in point than any to which we have been referred. It was a suit, against the collector of the port of New York, to recover excessive fees charged by him for issuing landing permits for passengers' baggage. One ground of defence set up was that the collector was required to pay the government any excess of fees over a certain sum, and it was held that this was no defence, even if such excess had been paid over. The following extract from the opinion of Judge Betts, indicates the principle on which the action was sustained. "The high character of the collector

takes away every color of suspicion that in these cases he was actuated by any wrongful motives. He administered his office as he found his predecessor had done. * * * And, it is not necessary to the maintenance of a civil action for the recovery of money wrongfully collected, that any turpitude should be proved against the officer. The suit rests on no illegal purpose of the defendant in exacting the payment. It is well sustained if his official power was exercised in the collection without warrant of law."

There is nothing in the suggestion that the state courts have no right to entertain suits against officers of the general government for acts done by virtue of their office. This right has been repeatedly recognised. It is scarcely necessary to add that our own cases in which taxes voluntarily paid to the public collector have not been permitted to be recovered stand on a different basis.

> Judgment reversed and judgment is now entered in favor of the plaintiff and against the defendant, for $4878 with interest, to be ascertained as provided for in the case stated.