Brown, for use, *v.* LeSuer, Appellant.

Argued May 4, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-

RIGE, RHODES, HIRT and KENWORTHEY, JJ.

John M. Russell, for appellant.

Paul Kern Hirsch, of Hirsch, Shumaker & Bash, for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

The plaintiff, in order to prevent the foreclosure of a mortgage on her real estate, had to pay off liens for school taxes due the Borough of Ingram, Allegheny County, for the years 1935, 1936, 1937 and 1938, amounting to $475.02. These liens included the tax due for the respective year and a penalty of 5%, imposed under section 561 of the School Code of 1911, P. L. 309, for delinquency in payment. It was agreed between her and the use-plaintiff, which held the mortgage on the property, that the latter should pay the liens and add them to the principal of the mortgage, thus avoiding a foreclosure. The use-plaintiff, accordingly, at the request of the owner, tendered the defendant, who was collector of delinquent and liened taxes[1] for the borough school district, the full amount of the liens and costs in satisfaction of the liens; but

---

[1] She was also collector of current taxes.

she refused to accept the same and satisfy the liens unless she was paid an additional sum of $23.74—being 5% of said liens (which already included said 5% *penalty*)—as her fee, commission or charge for collecting said taxes. Accordingly, in order to prevent the frustration of the arrangement made for the funding of the amount of said liens as an addition to the principal of said mortgage, the use-plaintiff, at the request of the property owner, paid for her the additional sum so demanded, under protest, and took from her an assignment of her claim against the tax collector for this alleged illegal exaction, and, after a demand upon the tax collector for the return of the same, which was refused, brought an action in assumpsit in her name, to its use, before a justice of the peace against the defendant to recover the amount so illegally demanded by her and paid her under protest. The defendant appealed to the county court from the judgment entered by the justice in favor of the use-plaintiff.

When the case came up for trial in the county court, the parties waived trial by jury. The trial judge entered judgment in favor of the use-plaintiff for $25.82, the amount so paid, plus interest. Defendant appealed to this court.

1. It is well settled that one who demands payment of a tax must show statutory authority for the imposition and collection of the tax: *Central Penna. Lumber Co.'s App.*, 232 Pa. 191, 193, 81 A. 204; *Schmuck v. Hartman*, 222 Pa. 190, 195, 70 A. 1091; and the principle applies equally well to one who seeks to collect a fee, commission or charge *from the taxpayer* for his services in effecting the collection of a tax lawfully imposed. Unless statutory authority for the collection of such fee, commission or charge from the taxpayer is shown he cannot be required to pay it: *Com. v. Scott*, 88 Pa. Superior Ct. 68, 71, reversed on another point in 287 Pa. 392, 135 A. 225. A practice, even though

long established, of collecting such unauthorized fee, commission or charge will not make it legal: *Lawrence County v. Horner*, 281 Pa. 336, 342, 126 A. 783.

The court below found that "there is no authority in the law for solicitors or tax collectors of school districts to levy such commission for the collection and satisfaction of liened taxes for school districts."

Our review of the statutes and the cases cited by the appellant leads us to the same conclusion.

The School Code of 1911, P. L. 309, and its amendments furnish, in Article V, a full and complete system for the levying and collection of school taxes. Sections 536-567 [2] inclusive relate to school districts of the second, third and fourth class—the School District of the Borough of Ingram is a fourth class school district. Hence we are not concerned here with taxes levied for city, borough or county purposes, whether under general or special legislation. The Code establishes a public school system subject to its provisions (sec. 1), and by its repealing clause (pp. 438-461) provides that it is intended as "an entire and complete School Code for the public school system in this Commonwealth, hereby established in every school district therein" and repeals 175 specifically named acts or parts of acts, "together with any and all other acts of assembly, general, special or local, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof". We have no doubt that it was the intention of the legislature to establish a complete code superseding and repealing all other statutes, general, special or local, in conflict or inconsistent with it or any part of it.

Section 561 of the School Code—as amended in 1925, P. L. 434—provides that "To all school taxes assessed and levied in all school districts of the third and fourth class ...... which are not paid on or before the first

---

[2] Added by Act of May 29, 1931, P. L. 243.

day of October in the year in which they are assessed and levied, there shall be added a penalty of five per centum, which shall be collected at the same time and in addition to the school taxes of which it is made a part." (See *Hamilton v. Lawrence*, 109 Pa. Superior Ct. 344, 348, 167 A. 509; *Appeal of City of Titusville*, 108 Pa. 600, 603). This was properly included in the liens. No provision whatever is made for any additional fee, commission or charge against the taxpayer, payable to the tax collector for the collection of any delinquent taxes whether entered as a lien, or not.[3]

Accordingly if school taxes are collected prior to October 1, the collector pays over to the treasurer of the school district the *total amount* of the tax (section 559)[4], and is paid such percentage or commission as has been agreed upon. If paid after October 1, 5% penalty is added .to the tax, which must be collected at the same time and in addition to the tax, of which it is made a part, (*Hamilton v. Lawrence*, supra), and the collector pays over to the treasurer the total amount so collected, and is paid such percentage or commission as has been agreed upon for collections made after October 1.

Two remedies are provided for the collection of school taxes, as well as other taxes, which are additional to the ordinary method by demand and distress, to-wit:

(1)  Liens may be filed in the prothonotary's office for delinquent school taxes under the Act of May 16,

---

[3] Section 503 authorizes an action of assumpsit by the school district for the tax, "and to any judgment obtained for such taxes shall be added a penalty of ten per centum, together with costs of suit." This shows an intention to exclude additional charges except where expressly provided.

[4] See also, Section 3 of Act of July 2, 1937, P. L. 2797.

198

1923, P. L. 207, and its amendments.[5]  In none of them is there any provision for a fee, commission or charge of 5% to the solicitor or tax collector for the collection- of the lien.

(2). Or the tax collector may, not later than the first Monday of May, in. the year succeeding the year in which the tax was assessed and levied, make a return to the county commissioners of delinquent taxes assessed and levied on seated lands for certification to the county treasurer and sale by him, under the Act of May 29, 1931, P. L. 280, and its amendments;[6] in which event the collector is exonerated from their collection (sec. 6).  But if the taxes are collected by the county treasurer, the tax collector shall be entitled to receive a commission of 2% from the taxing district, when the tax is paid to it by the county treasurer. This method was not. adopted in this case and it has no application here.

None of the statutes relied on by the appellant justifies the collection of this charge.

The Act of May 1, 1861, P. L. 450, relating to Allegheny County has no application here.  Sections 20 to 25 relate to taxes for *state, county* and *military* purposes, (School taxes are not mentioned. See *Sugden v. Rothschild,* 304 Pa. 365, 370, 372, 155 A. 864) and direct the county commissioners to make a duplicate of said taxes, which is to be delivered to the *county treasurer,* who shall be liable for the whole amount of taxes contained in said duplicate less exonerations allowed (sec. 20) ; and after providing for

---

[5]As amended by Acts of May 4, 1927, P. L. 729 and 733; April 16, 1929, P. L. 526; April 30, 1929, P. L. 902; April 24, 1931, P. L. 61; July 12, 1935, P. L. 673; May 28, 1937, P. L. 1002; June 5, 1937, P. L. 1732; July 2, 1937, P. L. 2808; June 20, 1939, P. L. 512, etc.

[6] Acts of March 24, 1933, P. L. 18; May 22, 1933, P. L. 940; July 12, 1935, P. L. 661; July 19, 1935, P. L. 1321; June 20, 1939, P. L. 498; July 28, 1941, P. L. 541.

a deduction of 5% as to taxes paid within three months after the time fixed for payment (sec. 22), directs in *section 23*—which is the section relied on—that as to taxes remaining unpaid for a period of four months after the day fixed for payment, the county treasurer shall issue his warrant to any citizen of the county authorizing and requiring him to demand and receive from the persons named in the schedule accompanying the warrant the sums charged therein against them, *"together with five per centum in addition thereto, which shall be in full compensation to such person for the collection thereof"*. By a supplement to this act, dated April 8, 1864, P. L. 316, it was provided (sec. 3) that the county treasurer shall keep separate accounts of all city, poor, school, borough and road taxes *received by him from the sales of real estate for taxes* or otherwise collected and paid over to him, for which *he* shall be entitled to retain out of said moneys so received by him, five per centum commission for his services; and, in section 6, it was provided "that an additional compensation, of five per centum, be allowed to collectors, for the collection of unpaid taxes, in the manner prescribed in the twenty-third section of the act, to which this is a supplement, to be paid by the party, or parties, charged with said unpaid taxes, and in the default mentioned in said act." These provisions have no application here, but are confined to instances where the county treasurer, charged with the collection of county, state, and military taxes, [not school taxes], issues his duplicate to collectors named by him for the collection of said taxes. If not specifically or impliedly repealed by subsequent legislation, the acts cannot apply to the collection of school taxes upon a warrant issued by the school board to its collector under the provisions of the school code. Furthermore, section 6 of the supplement of 1864, P. L. 316, is confined to collections made under the 23d section of

the Act of 1861, P. L. 450, and has no application to liens filed by the county controller under section 24, and their collection under section 25, as supplemented by Act of April 8, 1862, P. L. 327 and 1864, supra, p. 316.

Nor does the Act of April 19, 1901, P. L. 81, furnish the authority for this charge, for it relates to cases where seated lands are returned for non-payment of taxes to the county commissioners for sale by the county treasurer,—the second additional method of collection abovementioned—which was not resorted to in this case; and by the Act of 1931, P. L. 280, supra, the collector's compensation, following such return and his consequent exoneration, is fixed at two per centum, to be paid by the taxing district.

The Act of April 12, 1881, P. L. 9, relates only to the collection of the *borough* tax. It does not apply to school taxes. Even in that act, the five per centum added to the tax does not go to the collector. It goes to the borough and is equivalent to the 5% penalty added to the tax under the school code. The act provides, "he [the collector] shall be allowed such compensation as shall be agreed upon, not exceeding five per centum of the amount collected".

See also Act of June 25, 1885, P. L. 187, which fixed the commission of the collector of taxes in boroughs and townships at two per centum on all taxes paid to him on which an abatement of five per centum was allowed, and at five per centum on all taxes afterwards collected—to be *deducted* by him when paying over his collections—thus showing that the commission was collectible from the taxing district.

2. We come, then, to the second question raised by appellant—Whether money paid in the circumstances here present can be recovered back by the plaintiff or the use-plaintiff, her assignee? In our opinion the payment was not voluntary within the legal mean-

ing of that term. While no execution had been issued, the plaintiff's property would have been foreclosed if she had not paid the delinquent taxes which were liens on her property, and her arrangement with the mortgagee to fund these taxes by adding them to the principal of the mortgage (to be paid, principal and interest, by monthly payments), could not be effected unless the tax liens were first satisfied; and the defendant would not satisfy the liens unless she was paid a fee, commission or charge of five per centum on the face of the liens, an exaction not authorized by any statute. To have refused to pay the sum so illegally exacted would have resulted in the foreclosure of the property for failure to have the tax liens discharged. The mortgagee, the use-plaintiff, was in no sense a mere volunteer: *DeHaven v. Roscon B. & L. Assn.*, 107 Pa. Superior Ct. 459, 460, 164 A. 69; *Hogg v. Longstreth*, 97 Pa. 255, 259.

In *American Steamship Co. v. Young*, 89 Pa. 186, a United States shipping commissioner charged 2439 seamen an additional and improper shipping fee of $2 each, when they re-shipped on the same vessel. The steamship company, which had paid this illegal charge, demanded its return and when payment was refused brought an action in assumpsit. The court below entered judgment for the defendant on the ground that the payments were voluntary and could not be recovered. The Supreme Court reversed, even though the payment was not made under protest, and speaking through Mr. Justice STERRETT said (pp. 191-193): "We think, that sound public policy requires us to hold that a public officer, who, *virtute officii*, demands and takes as fees for his services, what is not authorized or more than is allowed by law, should be compelled to make restitution. He and the public who have business to transact with him do not stand upon an equal footing. It is his special business to be conversant with

the law under which he acts, and to know precisely how much he is authorized to demand for his services; but with them it is different. They have neither the time nor the opportunity of acquiring the information necessary to enable them to know whether he is claiming too much or not; and, as a general rule, relying on his honesty and integrity, they acquiesce in his demands ...... In *Steel v. Williams*, 8 Exch. Rep. 625, it is said by one of the judges that 'any person who illegally takes money under color of an act of Parliament, is liable to be sued for it, though the money is not to go into his own pocket'. The language of Judge WOODRUFF in *The Fire Ins. Co. v. Button*, 8 Bosw. 148, is in point. He says, in sustaining an action against a public officer for money illegally demanded and paid, 'It should be deemed sufficient that the officer takes advantage of his official position to make the exaction; due protection to those whose necessities require them to deal with persons exercising official powers, or discharging duties in their nature official, requires that moneys so paid should be the subject of reclamation'. The case of *Ogden v. Maxwell*, 3 Blatch. 319, is perhaps more nearly in point than any [to] which we have been referred. It was a suit, against the collector of the port of New York, to recover excessive fees charged by him for issuing landing permits for passengers' baggage. One ground of defense set up was that the collector was required to pay the government any excess of fees over a certain sum, and it was held that this was no defense, even if such excess had been paid over. The following extract from the opinion of Judge BETTS, indicates the principle on which the action was sustained. 'The high character of the collector takes away every color of suspicion that in these cases he was actuated by any wrongful motives. He administered his office as he found his predecessor had done ...... And, it is not necessary to the maintenance

of a civil action for the recovery of money wrongfully collected, that any turpitude should be proved against the officer. The suit rests on no illegal purpose of the defendant in exacting the payment. It is well sustained if his official power was exercised in the collection without warrant of law' ". See also *Maxwell v. Griswold,* 10 Howard (U. S.) 242, 256; *Swift Co. v. United States,* 111 U. S. 22, 30.

In *Borough of Allentown v. Saeger,* 20 Pa. 421, a suit by a taxpayer to recover taxes which he alleged were illegally assessed, LOWRIE, J., speaking for the Supreme Court, said: "If it had been paid under protest, that is, with notice that he would claim it back, this would repel the implication of an assent, and give rise to the right of reclamation."

See along similar lines, *United States v. Nunnally Investment Co.,* 314 U. S. 702, with special reference to the last two pages of the opinion.

The assignments of error are overruled and the judgment is affirmed.