## In re West Salem Township's Auditors' Report

*L. R. Rickard,* for appellants.

*Archie Voorhies,* for respondents.

ROWLEY, P. J., March 5, 1947.—This is an appeal by three school directors from a surcharge imposed upon them by the auditors' report for West Salem Township School District for the year ending July 3, 1944.

At a meeting of the school board of said district held on April 5, 1944, appellants, Clara Hunt, Edward Frolich and Paul Snyder, directors, voted in favor of a motion "to pay James Cullinan 10 percent commission on all delinquent taxes for the years 1929-1936, inclusive, collected by him and turned over to West Salem School Board".

The motion prevailed, and, on the same date, an order for $200 in favor of James Cullinan was drawn upon the treasurer of the school district, and the order was subsequently paid.

After examination of the school district's finances for the year ending July 3, 1944, the township auditors surcharged the sum of $200 against each of the three directors who had supported the motion which had authorized payment of that amount to James Cullinan.

For a clear understanding of the question now presented, it will be necessary to review certain occur-

rences which antedate the school board meeting of April 5, 1944.

C. H. Eich, the duly elected tax collector, having died in December 1937, his bondsmen became liable to the school district for uncollected taxes upon his duplicates for the years 1929 to 1936, inclusive.

The Act of April 23, 1929, P. L. 634, 72 PS §5737 et seq., authorized the bondsmen to appoint a collector to collect taxes remaining unpaid. The collector so appointed is invested by law with all the authority and power vested in any collector of taxes.

The same statute authorizes the authority which issued the collection warrant to the original tax collector to issue an additional collection warrant to the appointed collector, upon request of the bondsmen of the original collector.

On January 10, 1938, the bondsmen and the administrator of the deceased collector's estate, by written instrument, appointed James Cullinan collector "to collect the taxes remaining unpaid upon such duplicates for the years 1929 to 1936, inclusive, and payable to the West Salem Board of Education, said collector to have full authority and power as now vested by the laws of this Commonwealth in any collector of taxes for the collection of such taxes".

This written appointment requested the Board of Education of West Salem Township to issue separate collection warrants to James Cullinan for the years 1929 to 1936, inclusive.

The school board met on January 25, 1938, and adopted a resolution which provided "that the C. H. Eich bondsmen of 1929-1936, inclusive, be given three months from this date to make settlement on all taxes uncollected on said duplicates, provided that such bondsmen immediately appoint a collector to collect such unpaid taxes".

At the same meeting it was also resolved "that the school board will allow five percent commission on all

taxes and penalties collected by the bondsmen for the years 1929-1936, inclusive, or by any person appointed by them for that purpose".

It was also resolved "that the president and secretary be authorized to issue an additional warrant to such person as may be appointed by the bondsmen on the duplicates for the years 1929-1936, inclusive, upon the request of such bondsmen".

Presumably, the school board issued its warrants to James Cullinan in accordance with the foregoing request and resolution. Thereafter, the school district regarded Cullinan as merely an agent for the bondsmen, to whom it owed no duty.

In January 1940 the school district entered suits against the respective bondsmen for the uncollected taxes, and on June 3, 1940, the school district obtained judgments against the bondsmen for the amounts claimed.

On October 25, 1943, the unpaid taxes having been settled to its satisfaction, the school district satisfied the judgments against the bondsmen, ignoring the matter of compensation to Cullinan who had collected and paid over to the school district taxes in the total of $2,207.

However, appellant directors, not without substantial reason, considered Cullinan a tax collector de jure, whom the district was bound to compensate for his collections.

Whether Cullinan was a tax collector de jure may be a debatable question. As between the school district and the bondsmen, it is no longer of practical importance. However, since appellants entertained that view, and since such view has some support in law, we shall adopt it in examining the legality of appellants' votes authorizing the payment to Cullinan.

Previous to the meeting of April 5, 1944, the school district had obtained satisfactory settlement of the duplicates, the bondsmen had been relieved of liability,

but Cullinan had not been compensated for his collections.

On April 5, 1944, James Cullinan appeared at a meeting of the school board and asked for a 10 percent commission upon the taxes theretofore collected and paid over by him. The minutes of that meeting imply that Cullinan stated to the meeting that the school board had agreed to pay him a commission of five percent upon his collections and that the bondsmen agreed to pay an additional five percent commission. (If the minutes correctly report the statement of Cullinan, it is a bit singular that he should demand 10 percent from the school board.)

Counsel for the board advised the meeting that Cullinan, having been appointed by the bondsmen, was not an employe of the board; and that the only obligation of the board with respect to commissions for collection, was to credit the bondsmen upon the duplicates collected by Cullinan, which, the attorney stated, had with five percent commission on the taxes and penalties been done.

The matter was discussed at length, after which it was moved by Snyder, seconded by Hunt, that Cullinan be paid 10 percent commission on "all delinquent taxes collected by him and turned over to West Salem School Board".

At this point, counsel again advised the board that Cullinan was an employe of the bondsmen, not of the school board. Notwithstanding this admonition by the board's attorney, directors Hunt, Frolich and Snyder, appellants, voted in favor of the motion. This particular act of appellants is the basis for the surcharge imposed upon them by the township auditors.

The school board was authorized by law to retain an attorney, and it was the plain duty of the members of the board to hearken to the counsel of their legal advisor.

Appellants' disregard in this respect is inexcusable.

The auditors' report declares:

"Said school district was not indebted in any amount to said James Cullinan."

That conclusion is not as free from doubt as the auditors' report implies.

The law authorized the bondsmen to appoint a tax collector. The appointment was reinforced by the action of the school board in issuing to the appointee its collection warrants and fixing a commission of five percent for collection. By virtue of the action of the bondsmen and the school board, Cullinan became a tax collector de jure, with "all the authority and power as now vested by the laws of this Commonwealth in any collector of taxes".

The school board is required by law to pay a commission for collection of taxes. The board has power to fix the rate of commission but it must fix a rate and such rate must be reasonable under the circumstances. Courts will set aside a rate that is either unjust to the collector or contrary to the public interest.

We are not here primarily concerned with the methods pursued by the bondsmen and the school board in ascertaining the liability of the former, however that matter is incidentally involved when we are called upon to judge the conduct of appellants with respect to a related matter.

By appropriate resolution, adopted January 25, 1938, the school board had fixed five percent as the rate of commission for collection of the taxes in question.

The right of Cullinan to a commission, as a tax collector, was granted to him by law. He was not dependent upon a contract with the school board. The authority of the board was only to fix the rate of commission.

"The relation of tax collector and municipality results from legislation and not from contract; the right of the holder of the office to receive the compensation

annexed to the office is legislative and not contractual":
Tarner v. Chambersburg Borough School District, 338
Pa. 417.

Prior to the school board meeting of April 5, 1944,
Cullinan had collected and paid over to the school district taxes aggregating $2,207.

The School Code of May 18, 1911, P. L. 309, sec. 554,
24 PS §605, prescribes the manner in which the tax
collector is to be paid: "such commissions or compensation to be paid by proper orders drawn on the
school treasurer, as other accounts are paid by any
school district."

The contention of the school district seems to be that
the liability of the bondsmen having been reduced by
the amount paid over by Cullinan, this credit constituted payment of the commission for collection.

Manifestly, the commission was not paid in the manner which the law directs, which direction is mandatory.

If the motion supported by appellants had authorized payment to Cullinan of a commission of five percent, they would be on firmer footing, but there was no
justification for the allowance of a rate of 10 percent.

The collector accepted the duplicates for collection
without complaint of the rate of commission theretofore established by the school board. Insofar as the
liability of the school board is concerned, this action
constituted an implied acceptance by Cullinan of the
compensation fixed by the board: Miller v. School District of North Versailles, 123 Pa. Superior Ct. 65.

It seems to be conceded that the taxes collected by
Cullinan were remnants remaining after unsuccessful
efforts by others to collect. It may be that, because of
the delinquent character of the accounts, a commission
of 10 percent was not excessive, however the compensation was a matter to be determined by the school board
in advance of the collection. Furthermore, the bondsmen had some responsibility to their appointee.

An individual who liberally compensates a worthy employe is to be commended, but no one may be liberal in disbursing public funds.

The services had been completed when appellants undertook to increase the compensation. The increase was wholly gratuitous and was therefore unlawful.

The records of the school district which contain an account of the application of the Cullinan collections were not offered in evidence, consequently our information is limited to the oral testimony which is not at all clear upon the point.

Before Cullinan was appointed, the face amount of the duplicates had been increased five percent by operation of law. The increase was not a penalty to be imposed by the school board. The additional five percent was a part of the tax to be collected, made so by operation of law: Hamilton v. Lawrence, 109 Pa. Superior Ct. 344.

"Section 561 of the school code—as amended in 1925, P. L. 434—provides that 'To all school taxes assessed and levied in all school districts of the third and fourth class . . . which are not paid on or before the first day of October in the year in which they are assessed and levied, there shall be added a penalty of five per centum, which shall be collected at the same time and in addition to the school taxes *of which it is made a part*'.": Brown v. LeSuer, 149 Pa. Superior Ct. 192.

Accordingly, if school taxes are paid after October 1, five percent is added to the tax, which must be collected at the same time and in addition to the tax, of which it is made a part, and the collector pays over to the treasurer the total amount so collected, and is paid such percentage thereon as has been fixed by the school board: Brown v. LeSuer, supra.

Apparently, the school district undertook to credit the commissions for collection upon the liability of the bondsmen. The testimony is that only $2,207, the pre-

cise amount paid over by Cullinan, was so credited. Obviously, nothing was included as compensation for collection. The commission upon $2,207, the amount collected, was $110.35, therefore, in order to apply the commissions upon the liability of the bondsmen, the total credit should be $2,317.35, not $2,207.

It is possible that the school district failed to increase the face of the duplicates by five percent as directed by law. If the face of the duplicates (excluding the additional five percent) was taken as the liability of the bondsmen, and if all the receipts from Cullinan were credited upon the face of the duplicates, the result would be advantageous to the bondsmen but this method would operate to the disadvantage of the collector. The amount collected, $2,207, represents 105 percent of the original charge of $2,101.90. Under the method last referred to, the amount $2,207 is regarded as including the face amount of $2,101.90 plus a commission of $105.10. But a proper calculation would compute the five percent commission upon $2,207, the amount actually paid over by the collector which produces $110.35 as collector's commission.

As before stated, appellants failed to exercise sound judgment with respect to the resolution authorizing the payment in question.

The Act of June 9, 1911, P. L. 865, provided that any officer of a school district whose act or neglect shall have contributed to the financial loss of the district shall be surcharged with the amount of such loss.

Section 517 of the School Code of May 18, 1911, P. L. 309, declares that: "Any school director voting for, or any officer approving, a school order for the payment of school funds for any other purpose, or drawn in any other manner than that provided in this act, shall, together with the surety or sureties on his bond, in addition to the penalty herein provided, be individually liable to the district for the amount thereof."

In Chester School District's Audit, 301 Pa. 203, there was an expression by the Supreme Court of sympathy with school directors surcharged in a case where the district did not suffer any loss from their breach of duty and they did not individually make any gain. The court there intimated that an amelioration of the law in that regard might properly be sought from the legislature. It was likely because of this suggestion that section 13 of the Act of May 29, 1931, P. L. 243, was enacted. That section provides:

"On appeal from an auditor's report, it shall be within the discretion of the Court having jurisdiction of the matter to sustain or not to sustain a surcharge where it appears that the appellant or appellants acted honestly and in good faith for the best interests of the school district, and where no loss or damage to the school district resulted from the action of such appellant or appellants."

No doubt the legislature was impressed by the fact that school directors, serving without compensation and apt to be laymen unacquainted with the details of statutory and decisional law, had frequently been surcharged in large amounts because of failure to comply with legal requirements even though that failure resulted from lack of knowledge and misunderstanding rather than from any wilful intent to evade the law or to obtain some improper advantage for themselves or others. Be that as it may, it is clear that this amendatory act made a drastic change in regard to the liability of school directors in cases where there was no corrupt motive: Scranton School District Audit, 354 Pa. 225.

That the instant directors acted honestly and in good faith cannot be doubted. There is not a scintilla of evidence, or indeed contention on the part of any one, that they sought any gain for themselves or were guilty of any favoritism.

There was no dishonesty. Honesty is concerned with the moral rather than the legalistic import of an act; these directors were not guilty of any moral turpitude.

Liability for these unpaid taxes rested upon the bondsmen but it was the duty of the school board to enforce that liability. The school board requested the bondsmen to appoint a collector; the board agreed to pay a collection commission of five percent; and the board issued warrants to the collector so appointed. Thus the employment of Cullinan may, with good reason, have seemed to appellants to be the joint act of the bondsmen and the board.

There was a claim that the bondsmen and the district undertook together to pay a commission of 10 percent.

We have said that the liability of the school district was limited to five percent, the amount fixed in advance of the collections, but it would be a harsh rule that would require the foresight of directors of a small school district to be as sound as the hindsight attained by a judge after a study of the statutes and decisions.

Appellants were elected to the school board five years after the appointment of Cullinan, a fact of some significance in the instant matter.

We have no hesitation in concluding that the school district was indebted to Cullinan for commissions in the amount of $110.35, consequently to that extent the surcharge must be set aside.

The only debatable portion of the surcharge is $89.65. This amount may be surcharged only if the expenditure contributed to the financial loss of the district. Under the earlier law "financial loss" meant the entire sum paid illegally. But "A similar construction cannot, however, be given to the words 'loss or damage' as used in Section 13 of the Act of 1931, for otherwise the amelioration in the pre-existing law which this amendment was obviously intended to effect

would be wholly illusory and unavailing; if every payment made in violation of the exact requirements of the Code constituted the 'loss or damage' to the district no exemption from surcharge would ever be possible even though the directors had acted honestly and in good faith": Scranton School Dist. Audit, supra.

We have discussed somewhat at length the manner in which the collections were credited with a resulting advantage to the bondsmen. We have also indicated that an alternate method would have been more advantageous to the school district and the collector.

If we might assume that Cullinan would have abandoned any claim upon the school district if appellants had not voted for the resolution in question, we could readily declare that appellants' votes resulted in a financial loss to the district. But who would undertake to say that Cullinan would not have pursued his claim by appropriate litigation?

Prior to the meeting of April 5, 1944, the attitude of the school district was that it owed Cullinan nothing. If this attitude had prevailed at the meeting of April 5th, with a rejection in toto of Cullinan's claim, it is not improbable that the collector would have sued the school district for a commission of 10 percent. The outcome of such a suit would have been unpredictable, nevertheless, it must be conceded that as to $110.35, plus interest, plus costs, his claim would have been quite impressive.

We have said that the payment made was not warranted by law. Under earlier legislation this fact would have imposed liability upon appellants to refund the amount. But the Act of 1931 authorized dismissal of a surcharge unless it appears that appellant directors acted dishonestly or there was loss to the school district.

The amelioration of the Act of 1931, supra, was supported and extended by the Act of May 15, 1945,

P. L. 538, which discloses the clear purpose not to penalize public officers for mere mistakes of judgment.

In considering the basis of a surcharge, we are required by the Act of 1945, to compare the results of the challenged act with "the results had the procedure been strictly according to law".

At the meeting of April 5, 1944, appellant directors were required to vote upon a disputed claim. They would not have been warranted in assuming that a vote to reject the claim would relieve the school district of liability. They were bound to consider that claimant might institute a suit that would involve expenditure by the district of an amount considerably in excess of the amount claimed.

We are not convinced that the amount authorized by the resolution exceeds the amount the district would have been required to expend if the claim had been rejected at the meeting of April 5th. Therefore, it cannot be said that there was loss to the district as a result of appellants' votes upon the resolution.

Appropriate regard for the principle that honest public officials, serving without compensation and acting in good faith, ought not to be penalized for errors of judgment not involving loss or damage to the municipality for which they act, requires us to sustain the appeal and dismiss the surcharge.

## Order

And now, March 5, 1947, this matter came on for hearing upon appeal of Clara Hunt, Edward Frolich and Paul Snyder from a surcharge imposed upon them by the auditors' report for West Salem Township School District for the year ending July 3, 1944, and same was heard, whereupon, after due consideration, it is ordered that the appeal be sustained; and it is further ordered that the surcharge of $200 imposed upon Clara Hunt, Edward Frolich and Paul Snyder be dismissed.