COMMODORE PERRY SCHOOL DISTRICT, Perry Township, Sandy Creek Township, Salem Township, Otter Creek Township, Deer Creek Township, and Sheakleyville Borough of Mercer County, Pennsylvania

v.

The CITY OF MEADVILLE, Its Council and Sara J. Limber, Its Wage Tax Collector; Greenwood Township, Its Board of Supervisors and Mary H. Adsit, Its Wage Tax Collector, of Crawford County, Pennsylvania, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.

Decided Dec. 7, 2004.

Diane Putney Adist and Dearald W. Shuffstall, II, Meadville, for appellants.

Robert G. Kochems, Mercer, for appellees.

Joseph W. Lazzaro, White Oak, for amicus curiae.

BEFORE: FRIEDMAN, J., and LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Appellants are the City of Meadville and Greenwood Township (collectively Employment Municipalities) and related persons[1] that collect earned income[2] taxes from individuals employed in their jurisdictions. Employment Municipalities require employers doing business within their borders to withhold this tax from their employees' wages regardless of where those employees reside and to remit the taxes withheld to the Employment Municipalities on a quarterly basis. Appellees (Residential Municipalities)[3] are school districts and municipalities that also impose earned income taxes on their residents, regardless of where these residents are employed. The Residential Municipalities filed suit to force the Employment Municipalities to remit certain earned income taxes that, the Residential Municipalities claimed, had been collected from nonresidents and improperly retained by the Employment Municipalities. The Court of Common Pleas of Crawford County (trial court) granted partial summary judgment[4] in favor of the Residential Municipalities, ordering the Employment Municipalities to remit all earned income taxes collected from nonresidents since 1995, with interest and costs. Further, the trial court held that under the Local Tax Enabling Act,[5] the Employment Municipalities could not charge the Residential Municipalities a fee for their tax collection services.

The background to this case is as follows. Under authority of the Local Tax Enabling Act, the Employment Municipalities have enacted ordinances to establish an earned income tax. In accordance with the ordinances, employers withhold the earned income tax amount from the earnings of all employees, regardless of their residence, and each quarter remit those taxes to the tax collector for the Employment Municipalities. Although the Em-

---

1. The Appellants in this appeal also include the City of Meadville Council, Sara J. Limber, Wage Tax Collector, the Greenwood Township Board of Supervisors, and Mary H. Adsit, Wage Tax Collector.

2. Section 13(I) of The Local Tax Enabling Act, Act of December 31, 1965, P.S. § 1257, as amended, 53 P.S. § 6913(I), defines "earned income" in relevant part as follows:
 Salaries, wages, commissions, bonuses, incentive payments, fees, tips and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property. . . .

53 P.S. § 6913(I).

3. Appellees include Commodore Perry School District, Perry Township, Sandy Creek Township, Salem Township, Otter Creek Township, Deer Creek Township, and Sheakleyville Borough.

4. Residential Municipalities apparently conceded that Employment Municipalities may be entitled a fee under other legal theories.

5. Act of December 31, 1965, P.L. 1257, as amended, 53 P.S. §§ 6901–6924.

ployment Municipalities are entitled to tax non-residents, they are not entitled to retain that tax if the non-residents live in a municipality that has enacted an income tax equal to that of the Employment Municipalities. In these circumstances, the Employment Municipalities forward tax revenue to the municipality of residence; since 1995, however, they first have withheld a collection fee from the amount remitted. It was this deduction that prompted the Residential Municipalities to seek a writ of mandamus. In response, the Employment Municipalities asserted various rationales for collecting this fee, both statutory and contractual.

The trial court rejected the statutory defense raised by Employment Municipalities. It held that under the Local Tax Enabling Act, the Employment Municipalities lacked the authority to withhold a fee for fulfilling its statutory duty to remit earned income taxes collected from non-residents to the Residential Municipalities. Thus, it granted Residential Municipalities partial summary judgment in the form of peremptory mandamus.[6] The Employment Municipalities then appealed to this Court.

On appeal,[7] the Employment Municipalities contend that the trial court erred in its construction of the Local Tax Enabling Act. In this regard, they raise two issues. First, they contend that the Local Tax Enabling Act does not require them to remit taxes collected from nonresidents to the jurisdiction of residence because they have not been appointed tax collectors for those jurisdictions. In any case, the Local Tax Enabling Act certainly does not require the Employment Municipalities to provide this service free of charge. Second, they contend that under the Local Tax Enabling Act, it is the responsibility of the individual nonresident taxpayers to file a tax return with the Employment Municipalities and request a refund. Such a refund would not be necessary if the legislature had expected the Employment Municipalities to distribute the earned income revenue to the Residential Municipalities.

This appeal is wholly one of determining the legislature's intentions. On many aspects of the system established in the Local Tax Enabling Act the Employment Municipalities and the Residential Municipalities agree. They agree that municipalities are not required to tax the earned income of both residents and non-residents, but they may if they decide that it is in their best interest.[8] They also. agree

---

**6.** Two issues are outstanding before the trial court: (1) the specific amount of money owed by the Employment Municipalities, and (2) whether the Residential Municipalities were contractually obligated to compensate the Employment Municipalities fee for their collection services. Notwithstanding these outstanding issues, the Employment Municipalities have appealed, asserting that under Pa. R.A.P. 311(a)(4) or (a)(5), the trial court's order effectively grants an injunction or peremptory judgment, rendering it appealable. Residential Municipalities do not contest the appealability of the trial court's order. We agree that it is appealable.

**7.** Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Fleetwood Area School District v. Berks County Board of Assessment Appeals*, 821 A.2d 1268, 1272, no.4 (Pa.Cmwlth.2003) (citations omitted).

**8.** Section 2 of the Local Tax Enabling Act provides:

The duly constituted authorities of the following political subdivisions, cities of the second class, cities of the second class A, cities of the third class, boroughs, towns,

that the maximum earned income tax, which is 1% for the municipalities involved in this appeal, must be shared between tax authorities.[9] Accordingly, where a municipality and a school district have each enacted a 1% earned income tax, the tax must be split between the school district and the municipality. Where the nonresident taxpayer resides in a municipality that has also adopted a 1% earned income tax, the residential municipality has a priority claim to the tax revenue. Further, the residential municipality need not share the tax revenue with the municipality or school district[10] where the taxpayer is employed. In the case where the employment municipality has enacted an earned income tax that is greater than the tax enacted by the municipality of residence, the employment municipality is entitled to the difference between the two taxes.

The parties also agree that collection of the earned income tax takes place at the source. Section 13(IV)(b) the Local Tax Enabling Act provides, in relevant part, as follows:

*(b) Every employer* having an office, factory, workshop, branch warehouse, or other place of business *within the taxing jurisdiction imposing a tax on earned income* or net profits within the taxing district who employs one or more persons, other than domestic servants, for a salary, wage, commission, or other compensation, *shall deduct at the time of payment thereof, the tax imposed by ordinance or resolution on the earned income due to his employe* or employes, and shall, on or before April 30, of the current year, July 31, of the current year, October 31, of the current year, and January 31, of the succeeding year, *file a return and pay to the officer the amount of taxes deducted* during the preceding year three-month periods ending March 31, of the current year, June 30, of the current year September

townships of the fist class, townships of the second class, school districts of the second class, school districts of the third class, and school districts of the fourth class, in all cases including independent school districts, *may, in their discretion*, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision. . . .

53 P.S. § 6902 (emphasis added).

9. Section 8 of the Local Tax Enabling Act provides in relevant part:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

\* \* \*

(3) On wages, salaries, commissions and other earned income of individuals, one percent.

53 P.S. § 6908. It further provides that:

Except as otherwise provided in this act, at any time two political subdivisions shall impose any one of the above taxes on the same person, subject, business, transaction or privilege, located within both such political subdivisions, during the same year or part of the same year, under the authority of this act then *the tax levied by a political subdivision under the authority of this act shall,* during the time such duplication of the tax exists, except as hereinafter otherwise provided, *be one-half of the rate,* as above limited, and such one-half rate shall become effective by virtue of the requirements of this act from the day such duplication becomes effective without any action on the part of the political subdivision imposing the tax under the authority of this act.

53 P.S. 6908.

10. Section 2 provides that school districts of the second, third and fourth classes may not "levy, assess or collect a tax on salaries, wages, commissions, compensation and earned income of *nonresidents* of the political subdivisions. . . ." 53 P.S. § 6902(5) (emphasis added).

30, of the current year, and December 31, of the current year, respectively. *Such return* unless otherwise agreed upon between the officer and employer shall show the name and social security number of each such employe, the earned income of such employe during such preceding three-month period, the tax deducted therefrom, *the political subdivisions imposing the tax upon such employe,* the total earned income of all such employes during such preceding three-month period, and the total tax deducted therefrom and paid with the return.

53 P.S. § 6913(IV)(b) (emphasis added). The recipient of the employer's tax return and "amount of taxes deducted during the preceding three-month period" is the "officer." *Id.* "Officer" is defined as the

*person,* public employe or private agency *designated by the governing body to collect and administer the tax* on earned income and net profits.

Section 13(I) of the Local Tax Enabling Act, 53 P.S. § 6913(I) (emphasis added).

In sum, Employment and Residential Municipalities agree on the amount of tax to be collected, where and how the tax is to be withheld from the taxpayer's earnings and which municipality or school district is entitled, ultimately, to retain the tax revenue. They part company, however, on the route by which the tax revenue finds its way from the tax collector, or "officer," of an employment municipality to the appropriate jurisdiction.

█ Employment Municipalities contend that the Local Tax Enabling Act does not require them to remit "non-resident income tax directly to the taxing jurisdiction of the employee's residence." Appellants' Brief at 15. They believe that Section 14 of the Local Tax Enabling Act provides the answer on how the income tax makes its journey to the appropriate juris-

diction. It states in relevant part as follows:

*Payment of any tax on salaries, wages,* commissions, other compensation or on net profits of business, professions or other activities *to a political subdivision by residents thereof* pursuant to an ordinance or resolution passed or adopted under the authority of this act *shall be credited to and allowed as a deduction from the liability of such persons for any other like tax* respectively on salaries, wages, commissions, other compensation or on net profits of businesses, professions, or other activities *imposed by any other political subdivision* of this Commonwealth under the authority of this act.

53 P.S. § 6914 (emphasis added). "Logically," Employment Municipalities asserts, "the taxpayer must pay both the resident and non-resident income taxes ... and seek a refund from the non-resident taxing jurisdiction in the amount of income taxes actually paid to his or her municipality of residence." Appellants' Brief at 15.

The Residential Municipalities counter that Employment Municipalities have the express statutory duty to remit to them the local income taxes that have been collected from non-residents. They point to Section 13(V)(h) of the Local Tax Enabling Act, which states, in relevant part, as follows:

*The officer shall, at least quarterly, distribute earned income taxes to the appropriate political subdivisions.* The political subdivisions shall not be required to request the officer to distribute the funds collected but shall at least annually reconcile their receipts with the records of the officer and return to or credit the officer with any overpayment. If the officer, within one year after receiving a tax payment, cannot identify

the taxing jurisdiction entitled to a tax payment, he shall make payment to the municipality in which the tax was collected. Within one hundred twenty days of the passage of this act, any present accumulated funds that are unclaimed shall be distributed on the same basis.

53 P.S. § 6913(V)(h) (emphasis added).

Employment Municipalities concede that tax collectors, or "officers," must make quarterly distributions, but they argue that this duty arises only if the tax officer for the Employment Municipalities has been appointed by the municipality of residence. "Officer" is defined, as noted above, as the person "designated by the governing body" to collect and administer the earned income tax. Section 13 of the Local Tax Enabling Act, 53 P.S. § 6913(I). This officer may serve more than one jurisdiction. Section 10 of the Local Tax Enabling Act provides in relevant part as follows:

Any political subdivisions imposing taxes under authority of this act are authorized to make joint agreements for the collection of such taxes or any of them. *The same person or agency may be employed by two or more political subdivisions to collect any taxes* imposed by them under authority of this act.

53 P.S. § 6910(a) (emphasis added). Employment Municipalities contend that because their tax officers have not been employed by Residential Municipalities, these individuals have no duty to the Residential Municipalities.

 In resolving this dispute we must give a strict construction to the Local Tax Enabling Act.[11] Further, any doubts about a taxing statute are to be resolved against the government and in favor of the taxpayer. The interpretation proffered by the Employment Municipalities would require individual taxpayers to pay taxes twice and then seek a refund from the Employment Municipalities. This construction creates a burden not expressly provided in the Local Tax Enabling Act and, obviously, places the burden on the taxpayer rather than upon the taxing authority. The burden lies more properly with the Employment Municipalities to account for the taxes they choose to collect from nonresidents.

We disagree with the Employment Municipalities that the Local Tax Enabling Act is silent on how earned income taxes make their way to the jurisdiction with the right to retain those taxes. Section 13(V)(h) plainly states that an "officer" must remit taxes each quarter to the "appropriate political subdivision." 53 P.S. § 6913(V)(h). The statute states this directive without qualification. Employment Municipalities would have us add the words "that have appointed the officer" after "appropriate political subdivision," thereby qualifying the officer's duty in a way not contemplated by the legislature. This we cannot do.[12] Thus, "appropriate

---

11. "[A] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer." *Skepton v. Borough of Wilson*, 562 Pa. 344, 350, 755 A.2d 1267, 1270 (quoting *Commonwealth v. High Welding Co.*, 428 Pa. 545, 550, 239 A.2d 377, 379 (1968)).

12. *See Rossiter v. Township of Whitpain*, 404 Pa. 201, 170 A.2d 586 (1961) (wherein the Supreme Court explained that a court cannot alter a statute under the guise of construing it by, *inter alia*, adding words intentionally omitted). 1 Pa.C.S. § 1923 allows a court to add words to a statute in the rare instance that interpolation is necessary to effect the legislature's purpose. It is not necessary to add words to effect the meaning of Section

political subdivision," as used in Section 13(V)(h), signifies any jurisdiction, whether or not the tax officer has been appointed by that jurisdiction.

Other provisions in the Local Tax Enabling Act support this reading of the statute. Section 13(IV)(b)[13] requires an employer to file with only one tax officer. It is consistent that this statutory requirement that the tax officer for the municipality of employment be responsible to make the distribution to the other jurisdictions.[14] In addition, Section 13(V)(h) of the Local Tax Enabling Act provides that if the tax officer, within one year after receiving a tax payment, cannot determine which Pennsylvania municipal or school district taxing authority should receive the tax, then the officer shall make payment to the municipality where the tax was originally collected. There is no reason that the legislature would require a tax officer to determine which taxing jurisdiction should receive the tax if the officer did not have to remit the tax to the appropriate jurisdiction.

We disagree with the Employment Municipalities that the right of an individual taxpayer to file for a refund is inconsistent with the obligation of a tax officer to forward earned tax revenue to the "appropriate jurisdiction" as set forth in Section 13(V)(h). The refund created in Section 14 of the Local Tax Enabling Act is complementary to, not inconsistent with, the duty of a municipality's tax officer to remit taxes to the proper jurisdiction. Even the best system will not perform perfectly 100% of

the time. The refund procedure simply provides the mechanism by which errors may be rectified upon discovery by a taxpayer.

Thus, we hold that the Local Tax Enabling Act requires the municipality of employment, by its tax officer, to determine whether, and to what extent, it may retain the earned income tax collected from non-residents. Thereafter, it is the duty of the municipality of employment, acting through its tax officer, to remit earned income tax revenue to the jurisdiction with a right to those taxes.

■ The Employment Municipalities contend that if the Local Tax Enabling Act requires them to remit earned income tax to the taxpayer's municipality of residence, then they must be entitled to a fee. Sections 13 and 14 of the Local Tax Enabling Act, however, are silent on compensation. Instructive here is a decision of the Pennsylvania Superior Court explaining why a fee for collecting a tax must be express and unequivocal.

In *Brown, For Use of Home Owners' Loan Corporation v. LeSuer*, 149 Pa.Super. 192, 195–96, 27 A.2d 754, 755 (1942) (citations omitted) (emphasis added), the Superior Court reasoned:

It is well settled that one who demands payment of a tax must show statutory authority for the imposition and collection of the tax, and *the principle applies equally well to one who seeks to collect a fee*, commission or charge from the taxpayer for his services in effecting the

13(V)(h) of the Local Tax Enabling Act, 53 P.S. § 6913(V)(h).

13. *See* p. 8, *infra,* for the text of Section 13(V)(h) of the Local Tax Enabling Act, 53 P.S. § 6913(V)(h).

14. In *Dunmire v. Applied Business Controls, Inc.,* 63 Pa.Cmwlth. 479, 440 A.2d 638 (1981),

the Court addressed this issue of effecting the tax credit set forth in the Local Tax Enabling Act. We held that "a tax credit is a direct reduction from the liability for the tax owed." *Id.* at 641. The credit is effected by requiring the tax collectors for Employment Municipalities must disburse nonresident taxes to the jurisdiction of the taxpayer's residence.

collection of a tax lawfully imposed. Unless statutory authority for the collection of such a fee, commission or charge from the taxpayer is shown he cannot be required to pay it. A practice, even though long established, of collecting such unauthorized fee, commission or charge will not make it legal.

Whether Employment Municipalities should be allowed a fee for remitting taxes to the Residential Municipalities as a matter of fairness and sound public policy is for the General Assembly to address.

In any case, we cannot say that the lack of a fee is patently unfair or, as the Employment Municipalities assert, an unfunded mandate. The Employment Municipalities have residents who work outside the jurisdiction. Sometimes, then, the Employment Municipalities are "Residential Municipalities" and can expect to have earned income taxes remitted to them without charge. Further, the Employment Municipalities chose to collect the earned income tax from nonresidents, and it is the consequence of that decision that led to the need for them to square their accounts with neighboring jurisdictions.

For these reasons, we affirm the trial court's grant of partial summary judgment to the Residential Municipalities.

### ORDER

AND NOW, this 7th day of December, 2004, the order of the trial court dated January 21, 2004, in the above-captioned matter, is hereby affirmed. The case shall proceed further on the remaining two issues stated herein.